## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. MARTIN, ADMINISTRATRIX.

[No. 19,148. Filed October 3, 1901.]

**APPEAL AND ERROR.**—*Record.*—*Bill of Exceptions.*—*Motions.*—A motion to make the complaint more specific is not properly in the record where the motion was merely referred to in the bill of exceptions by reference to the page in the transcript where it had been copied by the clerk, without order of court, and no order of court was made that the motion should be made a part of the record without a bill of exceptions. *p. 218.*

**NEGLIGENCE.**—*Pleading.*—*Contributory Negligence.*—A complaint in an action against a railroad company for the death of plaintiff's intestate is not bad as failing to show decedent's freedom from fault, where it is shown that decedent was in a place where he had a right to be, was in the line of his employment, and was killed while there in a collision with respect to which defendant was negligent, there being a general allegation of freedom from contributory negligence, it not being disclosed what decedent did, or what, having the opportunity, he failed to do. *p. 219.*

**SAME.**—*Contributory Negligence.*—*Evidence.*—*Railroads.*—Decedent, as a locomotive engineer, was engaged in operating a switch engine over tracks used by several companies. No printed rules of any of the companies applied to the operation of trains upon the common tracks, but it was established by usage that all trains had equal rights; all south bound ran on the east track, all north bound on the west; each engine or train was to be run under full control, and

Pittsburgh, etc., R. Co. v. Martin.

with a sharp lookout to avoid running into any engine or train ahead of it. An ordinance forbade the running of engines at a higher speed than four miles an hour. While engaged in switching a car to a side-track, defendant's passenger train was seen approaching from the north at a distance of about 750 feet, whereupon decedent blew the whistle as a warning for defendant's train to stop, and said to the fireman "they will stop." Decedent had stopped his engine and thrown the lever to proceed south when defendant's engine, under a headway of thirty miles an hour, ran into decedent's engine, killing decedent. *Held*, that decedent was free from contributory negligence. *pp. 219-224.*

TRIAL.—*Admission of Evidence.—Exception.*—An offer to prove must be made before the objection to the question has been sustained. *p. 224.*

SAME.—*Evidence.—Railroad Rules.*—In the trial of an action for damages caused by a collision, no error was committed in refusing to permit defendant railroad company to introduce in evidence a book of rules, in the absence of evidence from which the jury might have found that the offered rules were in force on the tracks where the collision occurred. *pp. 224, 225.*

SAME.—*Evidence.—Railroad Rules.*—A question propounded to a witness relative to the rules or custom governing the operation of trains on a certain railroad was not objectionable on the grounds that the printed rules were the best evidence, where it was not disclosed by the evidence that any printed rules were in use, and it was shown that the rules inquired about were rules that had become established by usage. *p. 225.*

APPEAL AND ERROR.—*Waiver of Error.*—Assignments of error not discussed on appeal are waived. *p. 226.*

TRIAL. — *Evidence. — Harmless Error.* — Available error cannot be predicated upon the action of the court in overruling an objection to the question, "State whether or not he was acting properly or improperly, or promptly or not promptly," the question relating to the manner in which an engineer obeyed signals, where the witness answered, "Yes, sir." *p. 226.*

RAILROADS.—*Negligence.—Violation of City Ordinance.—Master and Servant.*—In the trial of an action for damages for the death of an engineer caused by collision with a train which was being run at a rate of speed in violation of a city ordinance, an instruction that the ordinance was enacted for the protection of the general public in crossing or passing upon railroad tracks, and not for the benefit of railroad employes while engaged in their work, was properly refused. *pp. 226, 227.*

SAME.—*Negligence.—Notice.—Instructions.*—In the trial of an action against a railroad company for damages for the death of an engineer

of another road, caused by a collision with a train which was being run in violation of an ordinance and the usages of the tracks, an instruction that decedent was bound to use reasonable diligence for the purpose of learning whether or not defendant's trains generally ran, or were scheduled to run, over the common tracks in violation of the ordinance and usages of the tracks, and that, if by reasonable diligence he could have learned of such violation, he went upon the tracks at his peril, was properly refused. *p. 227.*

From Marion Superior Court; *J. L. McMasters,* Judge.

Action by Lettie Martin, administratrix, against the Pittsburgh, etc., R. Co., for the death of her husband. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*S. O. Pickens,* for appellant.

*J. B. Kealing* and *M. M. Hugg,* for appellee.

BAKER, J.—Appellee recovered a judgment against appellant for $7,250 for wrongfully causing the death of her intestate. Appellant assigns that the court erred in overruling its motion to require each paragraph of complaint to be made more specific, its demurrers to the first and second paragraphs of complaint, and its motion for a new trial.

The motion to make more specific is not in the record. The clerk has copied the motion into the transcript as a part of the proceedings of the day on which the motion was filed. After the motion was overruled, time was given in which to file a bill of exceptions. The bill, as copied by the clerk, does not contain the motion, but refers to the place in the transcript where it had been previously copied. No order of court was made that the motion should be a part of the record without a bill of exceptions. The act of the clerk in copying the motion into the transcript, outside of the bill and without order of court, was unwarranted under §662 Burns 1901, §650 R. S. 1881 and Horner 1897. Only those matters that are already properly in the transcript as a part of the record may be brought into the transcript of a bill of exceptions by reference. *Gussman* v. *Gussman,* 140 Ind. 433.

In support of the demurrers, appellant contends that appellee's averments do not affirmatively show that the decedent was free from fault. In the first paragraph the accident is described substantially as follows: That, from Washington street to Massachusetts avenue, in Indianapolis, Indiana, appellant, the Big Four, the Lake Erie and Western, and the Monon companies used a line of railway tracks in common; that on August 7, 1897, and long prior thereto, decedent was employed by the Monon company as a locomotive engineer; that on that day decedent, in performance of his duties to his employer, had his engine upon the common tracks, and thereupon appellant wrongfully, carelessly and negligently ran one of its engines against decedent's engine and killed him without any fault on his part. The second paragraph comprised substantially the same and the following additional averments: That it was the rule and custom of all the companies, as appellant knew, that engines and cars should be run over the common tracks at a reasonable speed and under full control of the engineers so that a stop could be made at any time within a very short distance; that appellant violated the rule, and ran an engine at an unreasonable and dangerous speed, without its being under full control of the engineer, wrongfully and negligently against decedent's engine and killed him without any fault on his part. Each paragraph contains the general averment that decedent was free from contributory negligence. . This is sufficient unless specific averments prove the general allegation to be false. It appears that decedent was in a place where he had a right to be, was in the line of his employment, and was killed, while there, in a collision with respect to which appellant was negligent. What decedent did, or what, having the opportunity, he failed to do, is not specifically alleged. The demurrers were therefore properly overruled. *Stewart* v. *Pennsylvania Co.*, 130 Ind. 242; *Citizens St. R. Co.* v. *Sutton*, 148 Ind. 169.

Appellant contends that the evidence fails to establish de-

cedent's freedom from contributory negligence. The evidence is conflicting at some points, but the jury were warranted in taking the facts to be these: Extending southerly from Massachusetts avenue to Washington street were two main tracks, used in common by appellant, the Big Four, the Lake Erie and Western, and the Monon companies. One track was owned by the Big Four and the other by the Lake Erie and Western. All south-bound engines and trains used the east track; north-bound, the west track. Near Massachusetts avenue was a switch, through which south-bound trains had to pass in order to enter upon this common track. Near Washington street was a switch, through which south-bound trains had to pass from this common track in order to enter upon the tracks of the Union railway company, a corporation that owned the Union station and a belt line connecting together all the railroads of Indianapolis. Near this last named switch was another, leading to the Monon freight yard. The Massachusetts avenue switch was in charge of a switch-tender employed by the Big Four. The Washington street switch was in charge of a switch-tender employed by the Union company. The distance between these switches was a little over a mile. No switch intervened. About 600 feet north of Washington street and parallel therewith was Market street, from which the common tracks curved somewhat to the east. The four companies heretofore named used the common tracks for their passenger and freight trains. More than thirty passenger trains passed daily over these tracks. The switch engines of all companies in the city used these tracks in the handling and interchange of freight cars. The trainmen were not permitted to throw the switches, but the tenders in charge governed the admission or exclusion of trains and engines. No printed rules of any of the companies, or of the companies jointly, applied to the operation of trains and engines upon the common tracks; but, by usage, the following rules had become established: While on these tracks

all engines and trains had equal rights; all south-bound ran on the east track, all north-bound on the west; each engine or train was to be run under full control and with a sharp lookout so as to avoid running into any engine or train ahead of it; no flagging or other warning to the rear was required or used; as no north-bound engines were admitted on the east track, and *vice versa,* the safety of all was to be maintained by each avoiding injury to those ahead; if an incoming passenger train from the north was ten or more minutes late, switch-engines with cars were admitted on the east or south-bound track; if a switch engine, moving south, had a car or cars in front destined for the Monon yard, the crew had the right to put the car in the yard, move northward sufficiently to clear the switch, and continue south; and if a passenger train followed, it was to be under full control, and its crew were to look out for the switch engine and cars ahead of it, to come to a full stop if necessary, and to whistle as a signal that they wanted the track, and thereupon the switching crew were to get off of the common track and out of the way as soon as practicable. An ordinance forbade the running of engines and trains anywhere in the city at a higher speed than four miles an hour. About 3 o'clock in the morning of August 7, 1897, a Monon switching crew came from the north to the Massachusetts avenue switch leading to the south-bound common track. The crew comprised the conductor, two brakemen, the fireman, and decedent as the engineer. The conductor had charge of his train and authority to direct the other members of the crew. Appellant's south-bound passenger train, according to schedule, was due in two or three minutes; but it was fifteen minutes late and was so reported. The switch-tender gave the track to the Monon conductor. The engine was at the north or rear end of a train of twenty freight cars, the southernmost one of which was destined to the Monon yard. The conductor was on this car, one brakeman was at the center of the train, the other brakeman was on the car next to the

engine, and the fireman and decedent were in the cab of the engine. Near Washington street the conductor gave the switch-tender a signal to open the switch leading into the Monon yard. The conductor cut off the car and when it had passed over the switch gave the signal to stop the engine. The car passed into the yard of its momentum. The south end of the remaining cars was over the switch about forty feet. The conductor gave the signal to go north. After going far enough to clear the switch, he signaled to stop and then proceed south. Just after this last signal was given, the fireman saw the reflection of the headlight of appellant's train which was then over 750 feet away. The train itself was not in sight on account of the curve in the track. The fireman notified decedent, who immediately whistled as a warning for appellant's train to stop, and said to the fireman "they will stop". The train was then about 400 feet away. Decedent had stopped his engine and thrown the lever to proceed south, when appellant's engine, under a headway of thirty miles an hour, ran into decedent's engine. The fireman, in the act of jumping, was thrown by the collision; but the engineer was caught and killed. The collision occurred about a mile from Massachusetts avenue, about twenty-four minutes after the switch engine, and about three minutes after appellant's train had left that avenue. Appellant's train, if under full control of its engineer, or if proceeding at the speed limited by ordinance, could have been stopped within seventy-five feet. The conductor of the switching crew could have got his train out of the way of appellant's passenger train in one minute by proceeding south as he was doing. It would have taken him five or six minutes to have put his train in the Monon yard, because the tracks were so occupied that he would have had to cut his train into sections and run it in on three different tracks in the yard.

Decedent was not negligent in entering upon the common track. The conductor had charge of the movements of the

train.   The switch-tender, in accordance with established
usage, opened the way.   There was no present imminent
danger to make it negligent for decedent to obey the direc-
tions of his conductor.   The Monon crew proceeded south
on the common track in a proper manner.   The Monon had
as much right to the track as appellant; but the duties
of the train crews were not reciprocal, for it was the duty of
appellant's servants to follow, under control, prepared to
avoid overtaking and running into the Monon train.   At the
yard-switch decedent acted upon the orders of his conductor.
He would have been without fault if his whole attention had
been taken up with watching for the conductor's signals at
the time and in handling his engine.   But, at the first indi-
cation of danger, the fireman told decedent of it, and he gave
appellant's servants a signal to stop.   He believed they
would act upon it, for he said to the fireman "they will
stop".   When it became apparent that they would not, it
was too late for decedent to escape.   The business of run-
ning a switch engine over the complicated tracks of a large
city, where scores of trains and engines are moving almost
constantly, is extremely hazardous, but necessary and law-
ful.   To require such an engineer to anticipate and provide
against the possible or probable negligence of trainmen of
other companies would be to deprive him of remedy for his
injuries or to drive him from his occupation.   He has the
right to go about his business, obeying the ordinances and
rules established for the safety of all, on the assumption that
others will do likewise; and it is only when, on the particu-
lar occasion, he learns, or by the exercise of reasonable dili-
gence under the circumstances might have learned, of the
negligent conduct of others, then threatening, that he is
required to exercise reasonable care to avoid injury.   *New
York, etc., R. Co.* v. *Grand Rapids, etc., R. Co.,* 116 Ind.
60; *Stringer* v. *Frost,* 116 Ind. 477, 2 L. R. A. 614, 9 Am.
St. 875; *Shoner* v. *Pennsylvania Co.,* 130 Ind. 170; *Pitts-
burgh, etc., R. Co.* v. *Moore,* 152 Ind. 345; *Baltimore, etc.,*

*R. Co.* v. *Peterson,* 156 Ind. 364. The cases cited by appellant that define the duty of travelers at highway crossings are manifestly inapplicable. Travelers can select their own time to cross the tracks. Decedent was proceeding rightfully along the track and could not have gotten off in time to avoid injury except by abandoning his post of duty before it became evident that appellant's servants would fail to stop. Nor is the case of *Evansville, etc., R. Co.* v. *Krapf,* 143 Ind. 647, in point. There, a collision occurred because two engineers, of different companies, each having the right to use a single track, came together from opposite directions, each failing to have his engine under such control as to stop when he came in sight of the other. Here, decedent was conforming to the city ordinance and rules of the track, and had his engine under full control. The collision, therefore, under the evidence which the jury had the right to accept, was chargeable solely to appellant's negligence.

Appellant asserts that the court erred in sustaining appellee's objections to certain questions propounded by appellant to its own witnesses in defense. The record shows that in each instance either no offer to prove was made or the offer came after the objection to the question had been sustained. No question is raised. *Gunder* v. *Tibbits,* 153 Ind. 591.

Appellant complains of the court's refusal to permit appellant to put in evidence certain printed rules of the Monon company. Counsel had a witness identify a Monon book of rules, and then asked if the rules therein were in force at the time of this accident; and the witness answered: "Principally. There may have been some changes. * * *. You would have to go over the records and examine them to see. Some of them have been stricken out. There, for example, is one canceled there. Some have been changed by bulletin orders." Counsel had the "one canceled there" identified as number 171; but no evidence is pointed out that shows what part of the remaining rules was in force and

what was stricken out or changed by bulletin orders. Those offered in evidence were not proved to have been in force when the accident occurred. Furthermore, no evidence is referred to by which it is shown that decedent ever had any knowledge of the offered rules. *Louisville, etc., R. Co.* v. *Berkey,* 136 Ind. 181. Again, counsel fail to cite any evidence in contradiction of appellee's which showed that the printed rules of the Monon did not apply to the operation of trains on the tracks of the Big Four and Lake Erie and Western from Massachusetts avenue to Washington street. In the absence of evidence from which the jury might have found that the offered rules were in force on the track where the collision occurred, the court properly excluded them as irrelevant. *Lake Erie, etc. R. Co.* v. *Mugg,* 132 Ind. 168.

Error is predicated on the court's permitting a witness for appellee to answer, over appellant's objection, certain questions as to the "rules", "rules or custom" and "general practice and custom" governing the operation of trains over the track where decedent was killed. The objection was that the rules were printed and were themselves the best evidence of their scope and meaning. The questions all occurred in the same connection. The first question in the context was whether there were any printed rules that applied to the common tracks, and the witness answered, without objection, that he (city yardmaster for the Monon at the time of the collision and for three years before that) had never seen nor heard of any, and that the Monon employes were not supplied with any. The "rules" inquired about were the rules that had become established by usage. The court, in ruling, remarked: "It is probably more a custom than a rule; if it is a well understood custom or rule of operation, I think he may answer." The objection made was not well taken.

The court overruled appellant's objection to the following question propounded by appellee to her witness Jay, who

was fireman on decedent's engine: "State whether or not he [decedent] was acting properly or improperly, or promptly or not promptly?" The objection urged in argument here is that the question asks the witness to give an opinion on the very issue the jury were called to try. If the question were such, and if appellant had made a proper objection, and if a prejudicial answer had been allowed to stand, the error would be patent. The question, however, appears in this connection: "Q. Who would you give the signal to? A. To Mr. Martin [decedent]. Q. And then what did Mr. Martin do? A. Whichever way I told him to go, he turned his engine that way. Q. How was he working along there that night? A. The same as ever. Q. State whether he was acting promptly on the signals? Counsel for defendant objected to the question on the ground that it is incompetent to prove how the engineer was acting. Q. State whether or not he was acting properly or improperly, or promptly or not promptly? Counsel for defendant objected to the question on the grounds and for the reasons stated. The court overruled the objection, to which ruling the defendant by counsel at the time excepted. A. Yes sir." The context shows that the witness was asked to state the manner in which decedent was acting on the signals given by the conductor for the movement of the engine, and was not asked to give his opinion as to decedent's care or negligence under all the circumstances of the case. If the question was obnoxious to the objection made to the trial court, appellant has waived the error by failure to present and discuss it; and the objection urged here is unavailing because it was not presented to the trial court. *Indiana, etc., Co.* v. *Wagner,* 138 Ind. 658; *Stout* v. *Rayl,* 146 Ind. 379. In addition, the answer was harmless because the witness did not state whether decedent acted properly or improperly, or promptly or not promptly, in response to the signals.

The court refused to give certain instructions to the effect

that the city ordinance was enacted for the protection of the general public in crossing or passing upon railroad tracks, and not for the benefit of railroad employes while engaged in their work. The action of the court was right. *Pittsburgh, etc., R. Co.* v. *Moore,* 152 Ind. 345; *Baltimore, etc., R. Co.* v. *Peterson,* 156 Ind. 364.

Other instructions were refused which were based upon the theory that decedent was bound to use reasonable diligence for the purpose of learning whether or not appellant's trains generally ran, or were scheduled to run, over the common tracks in violation of the ordinance and the usages of the tracks, and that, if by reasonable diligence he could have learned of appellant's general practice to violate the ordinance and usages of the tracks, he went upon the tracks at his peril. A person may be bound by constructive knowledge of defects in the place where he works, but he certainly is not affected by constructive knowledge of the dangerous habits of third persons whom he meets on a common highway. What has been said in considering the evidence really disposes of this question. A holding to the contrary would seem to lead to the proposition that a multiplication of iniquities produces righteousness.

The last complaint is of the court's refusal to give appellant's instructions to the effect that decedent's duty to exercise reasonable care did not end with his own compliance with the ordinance and usages of the track, but that he was required to use diligence, under the circumstances, at all times preceding the collision, to avoid injury to himself. This subject was fully covered by instructions given.

Judgment affirmed.