## CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY *v.* LEACHMAN.

[No. 20,241. Filed December 15, 1903.]

HIGHWAYS.—*Right of Traveler to Pass Over Dangerous Highway.*—If a place in a highway is not impassable, or known to be so defective as to make injury probable by entering into it at all, a traveler will be justified in proceeding if he observes that degree of care and caution which a person of ordinary prudence, in like place, would deem sufficient successfully to guard against the threatening danger. *pp. 515, 516.*

SAME.—*Intersection of Highway by Railroad.—Duty of Railroad.*—It is the imperative statutory duty of a railroad company, when in the construction of its road it intersects an established highway, to restore the highway to its former state, or in a sufficient manner not to impair unnecessarily its usefulness, and in such manner as to afford security for life and property. *p. 516.*

RAILROADS.—*Injury of Traveler at Defective Highway Crossing.—Assumption of Risk.*—Whatever danger or risk, obvious or otherwise, which results from the failure of a railroad company to perform its statutory duty to keep a railroad and highway crossing safe and in good condition for travel, is assumed by the railroad company, and not by the traveler upon the highway. *p. 516.*

TRIAL.—*General Verdict.—Answers to Interrogatories.—Conflict.*—A general verdict will prevail against special findings of fact in answer to interrogatories; unless it clearly appears that the general verdict, after being reënforced by the assumed proof of all favorable

facts provable under the issues, and all natural inferences arising from such facts, in its relation to such special findings, is so incompatible and contradictory on some material point that both can not possibly be true. *p. 517.*

TRIAL.—*Maintaining Defective Highway Crossing.*—*Injury to Traveler on Highway.*—*Negligence.*—In an action against a railroad company for personal injuries, answers by the jury to interrogatories showed that the defendant maintained defective approaches at a highway crossing; that the plaintiff, who was familiar with the defective condition, was, by reason of the defects, injured while attempting to pass over the crossing with a loaded farm wagon drawn by two gentle horses; that the defendant had frequently passed over the crossing in safety with similar loads, and that at the time of the injury he had taken the precaution to lighten the load and fix the brakes before proceeding to cross. *Held,* that the plaintiff could not, as a matter of law, be held negligent so as to overthrow a general verdict in his favor. *pp. 517, 518.*

From Montgomery Circuit Court; *Jere West,* Judge.

Action by Jerome B. Leachman against the Chicago, Indianapolis & Louisville Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*E. C. Field, H. R. Kurrie* and *Thomas & Foley,* for appellant.

*M. M. Bachelder,* for appellee.

HADLEY, J.—Appellee recovered against appellant a judgment for personal injuries alleged to have been caused by the negligence of appellant in the construction and maintenance of certain approaches to a highway crossing of its railroad. Divers answers to interrogatories were returned with the general verdict, and the correctness of the court's ruling that said answers did not entitle appellant to judgment notwithstanding the general verdict is the only question presented.

The complaint avers that appellant in constructing its railroad intersected an established highway in Montgomery county known as the "Haw creek road" with a fill twenty feet higher than the surface of the highway; that prior to said intersection the Haw creek road was at that place

level and smooth, making travel thereover easy and safe to life and property; that under pretense of restoring. said highway to the condition it found it, the defendant constructed the approaches of said highway to the top of its railroad embankment, and constructed, and has ever since maintained, the said highway approaches in a negligent manner in this: that said approaches are so steep, rough, narrow, and unguarded as to make it unsafe and dangerous to travel over the same with animals and vehicles; that the plaintiff, with his family, was traveling along said highway with his team hitched to a wagon, and was compelled to pass over said railroad on said unsafe approaches, because there was no other place or way provided, or whereby he could pass over the defendant's said railroad; that in attempting to pass over the same, and while in the exercise of great care, his wagon and team, by reason of said negligent construction and maintenance, fell down the west approach, whereby the plaintiff was precipitated from his wagon to the ground, and thereby injured.

The facts found in answer to interrogatories are, in substance, as follows: The plaintiff was injured while driving west on the Haw creek road at a point where the defendant's railroad intersects said highway with a grade above that of the highway. At the point of intersection the highway runs east and west, and the railroad north and south. The defendant's track was higher than the traveled highway, and to enable travelers to get over the railroad the defendant had constructed approaches, but these approaches were not, any part of them, suitable for travel, and were unsafe for an ordinary farm wagon drawn by two horses to be driven over them. When injured the plaintiff was driving two animals hitched to a farm wagon loaded with farm implements, and with a corn-planter tied and trailing behind. The team plaintiff was driving was gentle, and easily managed, and had often been safely driven by the plaintiff over that crossing. The condition

of the crossing was such as to cause the plaintiff's wagon, when it left the center of the railroad track and started down the west side, to run against the team and force it over the embankment. The corn-planter tied on behind and the implements in the wagon in part caused the wagon to run down against the team when it started down on the west side. The plaintiff stopped his wagon at the foot of the east approach, and caused his wife and children, who were riding with him, to leave the wagon. The plaintiff was familiar with the crossing and its condition, and knew it was unsafe for one to ride in a wagon loaded as his was over the crossing and down the west approach, but did not believe his wagon, loaded as it was, would force his team over the embankment, or cause any other injury. The plaintiff knew that the only safe way to go over the crossing was to leave the wagon and walk on the ground. While descending the grade he stood up, and had the brakes set, and the wheels of his wagon locked.

It is the law that one is not always bound to abandon travel on a highway because he knows it to be defective and dangerous. See cases collected in *Town of Gosport* v. *Evans,* 112 Ind. 133, 2 Am. St. 164. *Board, etc.,* v. *Mutchler,* 137 Ind. 140, 148; *Board, etc.,* v. *Brown,* 89 Ind. 48.

It is doubtless the duty of the traveler to avoid all threatening situations by going another way when he may reasonably do so, but he is entitled to travel the highway, and when he has no alternative, as in this case, he is not bound to forego an effort to pass, provided the highway is not so defective as to make it obvious to a person of ordinary understanding that it can not be encountered without injury. *City of Ft. Wayne* v. *Breese,* 123 Ind. 581.

A traveler must, however, in all cases observe due or ordinary care; that is, his care must be great or slight, in the particular case, according to the degree of peril that confronts him, and in no case less than he might, under the circumstances, reasonably and honestly believe suffi-

cient to avoid injury. And if the place is not impassable, or known to be so defective as to make injury probable by entering into it at all, he will be justified in proceeding if he observes that degree of care and caution which a person of ordinary prudence, in like place, would deem sufficient successfully to guard against the threatening danger. *City Huntingburg* v. *First,* 15 Ind. App. 552, 555; *Town of Gosport* v. *Evans,* 112 Ind. 133, 138, 2 Am. St. 164.

In the last case cited it is said by Mitchell, J., that "the doctrine to be extracted from the cases is, that although a sidewalk, or highway, may be in an apparently defective or dangerous condition, yet a person with knowledge of the defect or danger is not on that account obliged to abandon travel upon the highway, if, by the exercise of care proportioned to the known danger, he may reasonably expect to shun or avoid the defect."

There is no question of assumed risk in this case, however well appellee knew of the defective condition of the crossing. Appellant, in the construction of its railroad, having intersected an established highway, it became its imperative statutory duty to restore the highway, thus intersected, to its former state, or in a sufficient manner not unnecessarily to impair its usefulness, and in such manner as to afford security for life and property. §5153 Burns 1901, clause 5; *Chicago, etc., R. Co.* v. *State, ex rel.,* 158 Ind. 189, 191, and cases cited.

Whatever danger or risk, obvious or otherwise, resulted from the failure of appellant to perform its specific statutory duty to keep the crossing safe and in good condition for travel, was assumed by appellant, who wrongfully created it, and not by appellee. The appellee is answerable only for his conduct in dealing with the defective conditions as he found them. As relates to him the question is: (1) Was it negligence to undertake, at all, to drive his team and load over the crossing in its known condition,

and (2) if he might reasonably undertake it, in his effort to do so, did he neglect the observance of any care or precaution required by ordinary prudence under the circumstances? If he might rightfully undertake to cross, and he used such care as an ordinarily careful and cautious person would observe in driving a like team and load over the crossing, he can not be adjudged guilty of fault. *Davis Coal Co.* v. *Polland,* 158 Ind. 607, 92 Am. St. 319; *Monteith* v. *Kokomo, etc., Co.,* 159 Ind. 149, 58 L. R. A. 944.

What do the answers to the interrogatories show? It has been so often decided by this court as to make it appear supererogation to cite the cases that a general verdict will prevail against special findings of fact in answer to interrogatories, unless it clearly appears that the general verdict, after being reënforced by the assumed proof of all favorable facts provable under the issues, and all natural inferences arising from such facts, in its relation to such special findings, is so incompatible and contradictory on some material point that both can not possibly be true. The rule is rooted in the theory that the general verdict is the jury's deduction from all the facts proved in the case, and in its support it will be presumed that isolated adverse facts specially found were overcome by other proved facts, if such other facts might have been properly proved under the issues. It is shown by the findings that appellee was familiar with the condition of the crossing; that his team was gentle, and he had often safely driven it over; and we must assume in support of the verdict, because not shown to the contrary, that in his previous successful efforts his team had drawn like or heavier loads. It is also found that he believed at the time of the accident that he could safely drive over, and, if he had safely driven the same team, with an equal load, over the crossing, frequently before, the jury had the right to consider this circumstance in adjudging the quality of his conduct.

Stress is laid upon the following questions and answers: "(26) Did the plaintiff know that it was a dangerous crossing? A. Yes. (27) Did the plaintiff know that it was then unsafe for one to ride in the wagon loaded as his was, * * * over said crossing, and down the west embankment? A. Yes." "(30) Did the plaintiff know that the only way in which he could safely go over said crossing at the time was to leave the wagon and walk on the ground? A. Yes." The term "safe" as here employed is used in a relative sense. One almost daily encounters something that is not entirely safe. We say that riding behind a nervous horse or walking on an icy pavement is dangerous, but ordinarily neither is accounted negligence *per se,* nor negligence at all, if one exercises care commensurate with the danger. Here the appellee knew the crossing was in some degree (not shown) dangerous, and that riding over it in the wagon would be in some degree unsafe; but he had encountered it frequently before, and by the observance of certain precautions had always safely avoided the danger by riding and driving in his wagon. On this occasion he lightened his load by causing his family to get out, set the brakes, and locked the wheels of his wagon, and stood up the better to manage and guide his team down the embankment. We can not say, from what is disclosed, as a matter of law, that his conduct amounts to negligence; and the jury having found in their general verdict, from all the evidence, that he acted as an ordinarily prudent person would have acted under the circumstances, we are not permitted to disturb their verdict.

Judgment affirmed.