## AMERICAN CAR AND FOUNDRY COMPANY *v.* VANCE.

### [No. 22,085. Filed January 30, 1912.]

1. MASTER AND SERVANT.—*Injury to Servant.*—*Unguarded Saw.*— *Proximate Cause.*—In an action by a servant against the master for injuries incurred by reason of a stick which he was using in dressing a belt coming in contact with the belt and knocking his hand at and against an unguarded saw, the proximate cause of the injury was defendant's failure to guard the saw. p. 81.

2. NEGLIGENCE.—*Pleading.*—*Complaint.*—*Contributory Negligence.* —*General and Specific Allegations.*—The general allegation in a ˙complaint for personal injuries that the plaintiff was free from contributory negligence is overcome by specific allegations therein that show that he was not thus free. p. 82.

3. MASTER AND SERVANT.—*Injury to Servant.*—*Complaint.*—*Inference as to Contributory Negligence.*—A complaint by a servant against the master for personal injuries alleging that it was plaintiff's duty to dress a belt while it was revolving around a pulley by placing oil thereon with a stick, and that while so dressing the belt the stick which plaintiff was using in dressing said belt came in contact with the belt and knocked his hand in which he held the stick at and against an unguarded saw, does not permit the inference that plaintiff needlessly permitted the stick to come in contact with the belt. p. 82.

4. MASTER AND SERVANT.—*Injury to Servant.*—*Contributory Negligence.*—*Burden of Proof.*—*Sufficiency of Evidence.*—In an action by a servant against the master, where the evidence showed that it was the duty of plaintiff to dress a belt which passed from a pulley attached to a counter-shaft, between two "idlers" spaced just far enough to permit the belt to pass between them, to a four-inch pulley attached to the saw mandrel and near to the saw operated by plaintiff, that it was necessary to dress the belt while the saw was running, that the saw was unguarded except for the partial protection afforded by a sheet iron hood designed to protect the operator from flying sawdust, that the dressing was a liquid about the consistency of molasses and was required to be applied to the side of the belt touching the pulleys, and the only means employed in applying the dressing was a small stick coated with the dressing, that at the time of the injury plaintiff was applying the dressing by letting it drip from the stick on to the lower strand of the belt about midway between the saw and the lower idler where the strands of the belt ran horizontally four inches apart and while doing so his hand was hurled against the saw and injured, but there was

conflict between the evidence of plaintiff's witnesses and that of defendant's witnesses and also among the defendant's witnesses as to the proper place to stand when applying the dressing and the manner in which it should be applied, and as to the practicability of guarding the saw, the jury was warranted in finding that plaintiff was free from contributory negligence, since the burden of proving contributory negligence was on the defendant. p. 85.

5. APPEAL. — *Special Findings.* — *Conclusiveness.* — Where on the trial of a cause there was competent evidence to support the special findings of the jury, such findings will not be disturbed on appeal. p. 86.

6. MASTER AND SERVANT.—*Injury to Servant.*—*Choice of Ways.*— *Contributory Negligence.*—If two ways of doing a thing, one safe and the other dangerous, are open to a person, and he voluntarily selects the latter, he cannot claim immunity from the consequences of contributory negligence. p. 86.

7. TRIAL.—*General Verdict.*—*Judgment on Special Findings.*—In an action by a servant for injuries sustained by his hand being thrown against a saw while he was dressing a belt, answers to interrogatories showing that when the saw was shifted to east it was under a hood and that plaintiff could have then dressed the belt at a point between the idlers and counter-shaft pulley, but which place was for other reasons as dangerous as the place where plaintiff applied the dressing but which do not show that when the saw was so shifted there was but the one place where the dressing could have been applied, other than that where plaintiff did apply it, evidence was admissible to prove that when the saw was so shifted as to be under the hood the only place where the dressing could be applied was at a point between the idlers and counter-shaft pulley which was equally as dangerous as the place where plaintiff did apply it, and consequently such findings are not in conflict with a general verdict for the plaintiff. p. 87.

8. TRIAL.—*General Verdict.*—*Special Findings.*—*Control.*—Where the special findings of the jury are irreconcilable with the general verdict, and the antagonism appears on the face of the record beyond the possibility of removal by any evidence legitimately admissible under the issues, they will control the general verdict. p. 87.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Action by Arthur R. Vance against the American Car and Foundry Company. From a judgment for plaintiff, defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*M. Z. Stannard,* and *Jonas G. Howard, Jr.,* for appellant. *Stotsenburg & Weathers,* and *James W. Fortune,* for appellee.

MORRIS, C. J.—Suit by appellee against appellant for personal injuries. The court overruled a demurrer to the complaint. Answer of general denial. Trial by jury. Appellant's motion for judgment on jury's answers to interrogatories overruled. Motion for new trial overruled. Judgment for $625 for appellee on the verdict.

The errors assigned, and relied on for reversal, were overruling the demurrer to the complaint, the motion for judgment on answers to interrogatories, and the motion for a new trial. The ground of the latter motion was the alleged insufficiency of the evidence.

The complaint alleges that on and prior to November 26, 1907, appellant owned and operated a car factory at Clarksville, and among the various kinds of machinery used therein was a cut-off saw; that appellee was employed to operate said saw, and it was a part of his duties under such employment to dress a belt, while it was revolving around a pulley, by placing oil thereon to prevent the belt from slipping on the revolving pulleys; the belt was near the saw, and was necessarily used in operating the saw; that in dressing the belt he was required to, and did, use a stick, which he held in his right hand, with which to apply the oil to the belt while it was in motion; that appellant negligently, and in violation of the statute law of Indiana, failed to furnish and supply the saw with a proper guard or covering; that it could have been properly guarded by placing a band of tin or wood over and around it, without rendering it useless for the purposes for which it was intended, and thereby the injury to plaintiff, caused by his hand coming in contact with the saw, have been prevented; that his injury was proximately caused by the failure to guard the saw; that the use of the saw, while unguarded, was danger-

ous, which defendant knew, and it also knew that the saw was unguarded at the time of the injury. The complaint further alleges that while dressing the belt, the "stick, which the plaintiff was using in oiling or dressing said belt, came in contact with said belt as the same was revolving around said pulley, as aforesaid, and knocked his right hand, in which said piece of timber or stick was held, at, upon and against said cut-off or stop saw, and that said saw was then and there unguarded as aforesaid, and that he was then and there injured by said unguarded saw. Plaintiff says that at the time his right hand came in contact with said saw, said saw was in rapid motion, and that by said contact of his right hand with said saw, while the same was in motion, as aforesaid, the third and fourth fingers of his right hand were cut, bruised and lacerated and injured in the joints and tendons, and that his said fingers were then and there and thereby injured to such an extent that he has lost the use of the same, and that they have been permanently injured, as aforesaid." It is further alleged that the injury was caused without any negligence on the part of appellee.

Counsel for appellant claim that the complaint is not sufficient, because it asserts the alleged failure to guard the saw was only a condition, and the act of permitting the stick to come in contact with the belt was the proximate cause of the injury.

1. 

We think the complaint is not open to the above objection. §8029 Burns 1908, Acts 1899 p. 231; *Bessler* v. *Laughlin* (1907), 168 Ind. 38, 40, 41, 42, 79 N. E. 1033; *Balzer* v. *Warring* (1911), 176 Ind. 585, 95 N. E. 257.

Appellant also claims that the complaint is insufficient to repel a demurrer, because it shows that appellee was guilty of contributory negligence in, as appellant contends, needlessly permitting the stick to come in contact with a rapidly revolving belt.

If, notwithstanding the allegation in the complaint of appellee's freedom from contributory negligence, specific allegations therein show that he was not thus free, the specific averments will control the general one. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 62 N. E. 492, 92 Am. St. 319; *Pittsburgh, etc., R. Co.* v. *Martin* (1901), 157 Ind. 216, 61 N. E. 229; *Citizens St. R. Co.* v. *Sutton* (1897), 148 Ind. 169, 46 N. E. 462, 47 N. E. 462, and cases cited; *Pennsylvania Co.* v. *McCormack* (1892), 131 Ind. 250, 30 N. E. 27, and cases cited; *Wolfe* v. *Peirce* (1900), 24 Ind. App. 680, 57 N. E. 555, and cases cited; *King* v. *Laycock Power House Co.* (1910), 46 Ind. App. 420, 92 N. E. 741.

In this pleading we do not think the inference can fairly be drawn from any averment, that the plaintiff needlessly permitted the stick to come in contact with the rapidly traveling belt.

Appellant, under its proposition that the verdict is not sustained by sufficient evidence, contends (1) that appellee was guilty of contributory negligence in permitting the stick, or his hand holding it, to come in contact with the belt; (2) that the saw was properly guarded; (3) that the evidence shows that plaintiff voluntarily elected to pursue a dangerous method of dressing the belt, when a safe method was open to him.

From the evidence, including photographs of the machine, the following uncontroverted facts are elicited: The power that operated the machine was transmitted primarily through a countershaft, fastened less than a foot above the floor, and parallel with, and about thirty inches west of, the operator's table. On this countershaft was fastened a large pulley, about fifteen inches in diameter. The countershaft extended south of the pulley about one foot. A vertical framework of iron, about four feet high, rested on the countershaft, or the framework thereof, on either side of the pulley, and the top of this frame connected with a lever on the east side of the table. Within this framework were set

two four-inch pulleys, called "idlers." The axis of the lower idler was eighteen or twenty inches above that of the large pulley, and the upper idler was just far enough above to permit a belt to pass between them. The axis of the three pulleys was in line. The top of this framework had an east-and-west motion of about eighteen inches. The bottom was stationary. Hinged on this pulley framework, nearly at right angles thereto, about three feet above the floor, was a frame, about three feet long, extending east, at the end of which was attached a mandrel, parallel with the table, and on the south end of which mandrel was fastened the cut-off, circular saw. On this mandrel, near the saw, was fastened a four-inch pulley. Power was transmitted from the countershaft to the saw mandrel, by means of a single belt extending from the bottom of the countershaft pulley upward over the top idler, thence horizontally over the mandrel pulley, back horizontally over the top of the lower idler, and then around the large pulley to the place of beginning. The operator's table was from twelve to fifteen feet long, located north and south, and was about sixteen inches wide, and its top was about three and a half feet above the floor. Extending through and across the top of this table was an opening half an inch wide, through which the top of the saw passed when cutting boards. The machine was located west of the table. The framework in which the saw was fixed was about six inches lower than the top of the table, and moved east and west about eighteen inches, in practically a horizontal plane, the movement being controlled by the operator's lever. When cutting lumber the saw came to the east edge of the table, and when not cutting, it was just west thereof. There was a sheet-iron hood, fastened to the top of the table, which was designed to protect the operator, when sawing, from flying sawdust. This hood extended seven or eight inches beyond the west side of the table. When the saw was farthest east, the west side of the saw was completely covered by the hood; when

the saw was farthest west, about half of it was covered by the hood, leaving the west half thereof entirely exposed. The saw was eighteen inches in diameter, and made about 2,000 revolutions a minute. It was necessary to dress the belt frequently to prevent its slipping. The dressing used was a liquid, about the consistency of molasses, and it was necessary to apply it on the side of the belt touching the pulleys. The only means employed in appellant's factory for applying the dressing was a small stick, which was coated by dipping it into the dressing container. Appellee was employed to run the above described machine, and it was his duty to dress the belt. He had been employed at this machine for eight or nine weeks before the accident. When injured, he was applying the dressing about midway between the saw and lower idler, where the two strands of the belt ran horizontally, four inches apart. He was applying it by letting it drip from the stick on the lower strand, while he held the stick in the four inch space between the strands, and while doing so his hand was hurled against the saw, and seriously injured. The upper strand, at that point, ran towards the saw. It was necessary to dress the belt while the saw was running, and from the south side of the machine. Appellee selected his place to stand, and the manner of doing the dressing, without direction or order from appellant. When the saw was shoved farthest west, the line of belt between the west sides of the countershaft pulley and the idler above leaned slightly west of a perpendicular. When the saw was in other positions, this line of belt was practically perpendicular. The line of the belt from the east rim of the large pulley to the east rim of the idler, just above it, leaned west of a perpendicular, even when the saw was farthest east.

There was a conflict between the evidence given by plaintiff's and defendant's witnesses, as to the proper place to stand when applying the dressing. There was also conflict of opinion with reference thereto among defendant's wit-

nesses. Plaintiff's witnesses testified that he was, when injured, in the proper place to make his work effective, and that it was no more dangerous to work in the place chosen, than it was to apply the dressing in the space within the belt between the countershaft pulley and the idler just above it; that in the latter place it could not be applied by dripping on the belt, because of the practically vertical position of the belt; that to apply it by touching the stick to the rapidly revolving belt, at that place, was dangerous to the operator. Some of defendant's witnesses testified that it was proper to drip the dressing from the stick on the belt where it ran horizontally. Most of defendant's witnesses testified that the proper place to apply the dressing was within the space between the large pulley and the idler just above it. One of them, long in defendant's employ, said it was proper to hold the stick against the traveling belt, when dressing it; that the dressing could be applied at the place between the large pulley and the idler above, when the saw was shoved east under the hood.

There was also a conflict of evidence about the practicability of guarding the saw by a shield projecting over it when in the position east of the table. Some of defendant's witnesses were of the opinion that such a guard would be in the way in taking off and putting on the saw.

Appellee testified that while holding the stick between the belts, the upper strand "wobbled", struck the stick, and knocked his hand into the revolving saw.

The burden of proving contributory negligence was on appellant. §362 Burns 1908, Acts 1899 p. 58. We cannot say that from the evidence the jury was not warranted in finding that appellee was free from con- 4. tributory negligence in permitting the stick, or his hand, to come in contact with the revolving belt.

As to appellant's second contention under the evidence— that the saw was properly guarded—it is sufficient to say that there was competent evidence given to support the

special findings of the jury in its answers to the following interrogatories: " (42) Was there a metal hood about eighteen inches in length above the cut-off or stop saw? A. Yes; but not so large. (43) If you answer interrogatory forty-two in the affirmative, state whether the said hood was designed to prevent the sawdust from flying when the machine was in operation? A. Yes. (44) If you answer interrogatories forty-two and forty-three in the affirmative, state whether the metal hood served as a partial guard for the saw? A. Yes. (45) If you answer interrogatories from forty-two to forty-four, inclusive, in the affirmative, state whether the saw could have been more fully guarded without materially interfering with the use and operation of the machine for the purpose for which it was intended? A. Yes. (46) If you answer interrogatories from forty-two to forty-four, inclusive, in the affirmative, state whether it was practical to have guarded the saw more fully and continue to make use of it for the purpose for which it was intended? A. Yes."

Appellant's third contention, under the evidence, is that it shows that appellee voluntarily elected to pursue the more dangerous method in dressing the belt, when a safer one was open to him.

If two ways of doing a thing, one safe and the other dangerous, are open to a person, and he voluntarily selects the latter, he cannot claim immunity from the consequences of contributory negligence. *Sale* v. *Aurora, etc., Turnpike Co.* (1897), 147 Ind. 324, 46 N. E. 669; *Stewart* v. *Patrick* (1892), 5 Ind. App. 50, 30 N. E. 814; *Levey* v. *Bigelow* (1893), 6 Ind. App. 677, 34 N. E. 128.

It is contended by appellant that the safe place for appellee to have applied the dressing was in the space between the countershaft pulley and the idler above, instead of the place selected by him. On this question the following interrogatory was submitted to the jury, and

answered: "(36) If you answer that the belt passed over the pulleys called idlers, and thence downward to and around the countershaft pulley, state whether plaintiff could have oiled and dressed the belt by placing the oil thereon at a point between the idlers and the countershaft pulley? A. Could have been done, but as dangerous as other." There was competent evidence to support this finding, and therefore it should not be set aside.

Appellant's contention that the court erred in overruling its motion for judgment on the answers to interrogatories is based on different reasons, the principal one of which 7. is that these answers show that by the use of the lever appellee could have driven the saw under the guard, and that if he had done this the accident could not have happened.

Interrogatory fifty-six and the answer thereto are as follows: "If you answer that the machine, known as the cut-off saw, had a table with an opening therein and a lever, state whether, when the saw was driven to the extreme east side of the table, it would remain in that position revolving in the opening of the table with the west edge thereof completely under the hood until the lever was thrown back toward the west.  A. Yes."

Special findings of a jury control the general verdict only where irreconcilable therewith, and the antagonism must appear on the face of the record, beyond the possi- 8. bility of removal by any evidence legitimately admissible under the issues. *Indianapolis St. R. Co.* v. *Hockett* (1903), 161 Ind. 196, 67 N. E. 106; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512, 69 N. E. 253.

The interrogatories and answers thereto do not show that when the saw was pulled east under the hood there was but one other place where the dressing could have been 7. applied, viz., in the space between the countershaft pulley and the idler just above.  Interrogatory thirty-six, and the answer thereto heretofore set out, show that the

place, therein described, for applying the dressing was as dangerous as the one selected by appellee. Under the issues, evidence was legitimately admissible to prove that when the saw was farthest east, and consequently under the hood, the only place where the dressing could be applied was the one described in interrogatory thirty-six, and that place was equally dangerous, not by reason of the revolving saw, but for other reasons.

It follows therefore that the answer to interrogatory fifty-six is not in irreconcilable conflict with the general verdict.

Without setting out at length the other reasons, because of which counsel for appellant contend that the special findings of the jury conflict with its general verdict, it is sufficient to say that the conflicts designated are only such as might be reconciled with the general verdict, by evidence legitimately admissible under the issues. There is no error in the record warranting a reversal. Judgment affirmed.

NOTE.—Reported in 97 N. E. 327. See, also, under (1) 26 Cyc. 1092; 92 Am. Dec. 213; 77 Am. Dec. 218; (2) 29 Cyc. 578; (3) 26 Cyc. 1401; (4) 26 Cyc. 1419; 18 Ann. Cas. 133; (5) 3 Cyc. 348; (6) 26 Cyc. 1257; (7) 38 Cyc. 1927; (8) 38 Cyc. 1927. As to contributory negligence being a defense against violation of statutory duty where statute excludes defense of assumed risk, see 13 L. R. A. (N. S.) 1152.