C. BUEHNER, as the Next Friend of WILLIAM BUEHNER, a Minor, Appellant, v. THE CREAMERY PACKAGE MANU-FACTURING CO.

**Master and servant:** NEGLIGENCE OF MASTER: SAFE PLACE TO WORK.
1 Under the evidence, it is held that the master failed to furnish plaintiff a reasonably safe place to work, in that cog wheels under the table at which plaintiff was employed were left unguarded.

**Assumption of risk.** A servant who works in an insufficiently lighted
2 place without complaint or promise that it will be remedied, assumes the risk of injury therefrom. Under the evidence plaintiff assumed the risk.

**Same.** Under the evidence as to complaint and notice of the danger
3 to a servant from unguarded machinery, the servant is held not to have assumed the risk incident to continuing his employment.

**Negligence:** PROXIMATE CAUSE. Where an injury to an employe
4 would not have happened had the master provided a safe place to work, it is immaterial that there was another concurrent cause of the injury resulting from the negligence of a co-employe.

**Contributory negligence.** An employe, knowing his danger, is re-
5 quired to use care to avoid it, but under the circumstances of this case it is held that the question of plaintiff's negligence was for the jury.

Appeal: DELAY IN ARGUMENT: AFFIRMANCE. A slight delay in the service of argument, which was unavoidable and causes no real prejudice, will not support a motion by appellee for affirmance of the judgment.

*Appeal from Black Hawk District Court.*— HON. A. S. BLAIR, Judge.

TUESDAY, JULY 12, 1904.

PLAINTIFF, a minor, brings action by his next friend to recover damages for personal injuries received while in the employ of the defendant. At the close of plaintiff's evidence the court, on motion, directed a verdict for defendant, and from judgment thereon the plaintiff appeals.— *Reversed.*

*Ezra A. Maxwell,* for appellant.

*Ryan, Ryan & Ryan,* for appellee.

McCLAIN, J.— Plaintiff, who was then about fifteen years of age, was employed by defendant in taking away from a tongue and groover machine short boards which had been tongued and grooved by the machine, to be fitted together into heads for butter tubs, and he had been so engaged for about a month. His place of work was at the end of a table, on which the boards were delivered by the machine, being fed into it by a co-employe, one Hopkins, who stood at the other end of the machine. The rate of speed with which the boards were run through the machine was under the control of Hopkins, and at the time plaintiff was injured the machine was so geared as to run the boards through quite rapidly. It appears that when the machine was thus geared for rapid work the boards were sometimes thrown beyond the end of the table. Under the table, and less than a foot from plaintiff as he stood at his work, was a set of cogwheels, so geared as to turn inwards, and these cogwheels were at the time of the accident, to be hereafter described, uncovered and

unprotected, so far as access to them under the table was concerned. The evidence tended to show that one of the boards thrown out by the machine went beyond the table, and fell to the floor; that plaintiff stooped to pick it up, and while thus in a stooping position, with his head about on a level with the table, another board was thrown beyond the table by the machine, which struck him in the head, causing him to jerk upwards and backwards, and while doing so his thumb was caught in the cogs, and so crushed that he lost a portion of the first joint. There was further evidence to show that it was not unusual for the boards to fall beyond the end of the table, and that it was plaintiff's duty in such cases to pick them up from the floor, and that plaintiff was required to work very rapidly when the machine was running at high speed, in order to take care of the boards as delivered to him by the machine. The negligence complained of was failure to guard the cogwheels so that there should be no danger that plaintiff, working at the end of the table, should come in contact with them, and failure to have the place where plaintiff was required to work so lighted that the plaintiff could readily see the cogwheels and avoid them. The grounds urged in the motion to direct a verdict were: That there was no evidence of negligence in these respects; that plaintiff had assumed the risk of the danger, whatever it might be; that the accident was due to the negligence of the co-employe, Hopkins, for which the defendant was not responsible; and that there was contributory negligence on the part of the plaintiff such as to defeat his recovery.

With reference to the failure to place a guard in front of the cogwheels under the table, so as to avoid the danger that the operator, stooping under the table to pick up a board,

1. Negligence of master: safe place to work.

should come in contact with them, we think the evidence sufficiently shows that such guarding would have been practicable, and that it would have been a reasonable precaution against an accident such as was likely to occur, and did occur, in the case of this plain-

tiff.   The defendant ought to have anticipated such a danger and provided against it.   In *Nadau v. White River Lumber Co.,* 76 Wis. 120 (43 N. W. Rep. 1135, 20 Am. St. Rep. 29), involving the question of liability of an employer for unguarded cogwheels, language is used which we think peculiarly pertinent here:   " That this set of cogwheels was dangerous, even to the most experienced workman, can hardly admit of a doubt.   But slight forgetfulness on the part of the workman while attending to his work might bring him in contact with it; an accidental slip while at work might bring his clothing and limbs in contact with it; and we have no hesitancy in holding that, when an employer places such a dangerous piece of machinery, into which his employe, by the least forgetfulness or unavoidable accident, may be thrown and seriously injured, in the immediate vicinity of the place where his employe must do his work, he fails to furnish him a reasonably safe place for doing his work, and is guilty of gross negligence, therefore, when the usefulness of the machine is not enhanced by reason of its being uncovered, and when the expense of covering would be a mere trivial sum."   It sufficiently appears that the occasion for stooping under the table was not the result of the negligence of the plaintiff in dropping the board, but resulted from the speed and force with which the boards were delivered by the machine, and that, in the exercise of reasonable care, plaintiff could not avoid the necessity of sometimes stooping below the table to pick up boards which dropped.

With reference to the lighting of the place where plaintiff was required to work, there was some evidence that, while the original provision for lighting was probably sufficient, **2. ASSUMPTION OF RISK.** some of the windows had become obstructed by refuse and dirt, so that during parts of the day it was rather dark under the table.   Had plaintiff continued in the employment under these conditions without complaint and promise on the part of defendant that the defects would be remedied, he would, no doubt, properly be held to have as-

sumed the risk, and this seems to have been the fact as to the want of light, for, while there is evidence that he complained that the light was insufficient, there is no proof of any assurance that any change would be made in the conditions in this respect. It appears that the foreman to whom the complaint was made responded, " Never mind, it will soon be light enough." But we do not think that this involved any promise of change in the supply of light, but only an assurance that the natural supply would be better at other times.

But with reference to the unguarded condition of the cogwheels, it appears that two days before the accident plaintiff complained to the foreman about the cogwheels being uncovered, saying that his trousers had got caught in the cogs, and that something ought to be put over them, and the foreman responded that he would get them fixed. Plaintiff testified that he remained in the employ of defendant, exposed to the danger involved in the uncovered condition of the cogwheels, because he thought, from what the foreman said to him, that they would be covered. It appears that there was a reasonable time after the complaint within which protection against danger from the uncovered condition of the cogwheels might have been furnished, and we think that, in view of the complaint and the promise of repair, the plaintiff cannot be held, as matter of law, to have assumed the risk resulting from leaving them uncovered. *Greenleaf v. Dubuque & S. C. R. Co.,* 33 Iowa, 52; *Pieart v. Chicago, R. I. & P. R. Co.,* 82 Iowa, 148; *Stoutenburgh v. Dow, etc., Co.,* 82 Iowa, 179; *Homestake Mining Co. v. Fullerton,* 69 Fed. Rep. 923 (16 C. C. A. 545).

3. SAME.

It is argued for defendant that the proximate cause of the accident was either the negligence of Hopkins, the co-employe, in feeding a board into the machine while plaintiff was in such position as to be struck by it when thrown out, or the blow received by plaintiff from such board, and not the uncovered cogwheels. But, excluding the negligence of plaintiff himself, it is immaterial

4. NEGLIGENCE: proximate cause.

whether there was another concurrent cause for the injury, if the injury would not have happened had the cogwheels not been negligently left unguarded. The very purpose of guarding the cogwheels would have been to avoid injury to an employe, if by some cause, not due to his own fault, he was brought within reach of them. We think there is no occasion here to go into an elaborate discussion of the question of proximate cause, but the conclusion reached is supported by the views of this court in the following cases: *Walrod v. Webster County,* 110 Iowa, 349; *Harvey v. Clarinda,* 111 Iowa, 528; *Hodges v. Waterloo,* 109 Iowa, 444.

Finally, it is argued for appellee that plaintiff well knew the position of the cogwheels, and the danger incident to their being uncovered, and that the injury received was due to his own negligent act in throwing his hand up from below so as to allow his thumb to be caught between the revolving wheels. It is true that plaintiff, knowing the danger, should have avoided it, and, unless he was excused by reason of attending circumstances from fault in failing to avoid such danger, there can be no recovery. But there were circumstances which the evidence tended to establish from which the jury might have found that plaintiff was not at fault. These circumstances were that plaintiff was required to work at great speed in order to take care of the boards as fast as they were thrown out by the machine, and was distracted by the blow on the head received while he was stooping over, so that for the time being he was not in condition to realize the probable effect of, or to voluntarily control, the motion of his hand. We cannot say, as a matter of law, that he was negligent in stooping over and putting his head in such position that he might be struck by a board thrown out by the machine, for the contact with the cogwheels was not a result which he could have reasonably anticipated as likely to follow if his head should be struck by a board. With reference to the connection of Hopkins with the accident, it does not clearly appear that the board which struck

5. CONTRIBU-TORY NEGLIGENCE.

plaintiff was put into the machine by Hopkins after he saw, or could have seen, that plaintiff was in a position to be struck by it. It seems probable from the evidence that the board which struck plaintiff had already been started through the machine when he stooped over. We reach the conclusion that the circumstances were such as to be properly for the consideration of the jury in determining whether plaintiff was guilty of contributory negligence in not avoiding a danger which would have been apparent to him had he not been distracted by the surrounding conditions. Each case must be considered with reference to the peculiar circumstances involved, but the following cases may be cited as supporting our conclusion: *Harker v. Burlington, C. R. & N. R. Co.,* 88 Iowa, 409; *Strong v. Iowa Central R. Co.,* 94 Iowa, 380; *Tobey v. Burlington, C. R. & N. R. Co.,* 94 Iowa, 256; *Lorenz v. Burlington, C. R. & N. R. Co.,* 115 Iowa, 377. As we have said in *Taylor v. Wabash R. Co.,* 112 Iowa, 157, all the facts must be considered in determining the question whether the employe exercised reasonable care, and it is for the jury to say whether circumstances calculated to throw the employe off his guard would excuse him for acting as he did.

Appellee's motion to have the case submitted as of a date prior to the filing of appellant's argument, and to affirm for want of argument, has been ordered submitted with the

6. **Appeal: delay in argument; affirmance.** case. The cause was assigned to be submitted on June 7th, and appellant's argument should therefore have been served on attorney for appellee on May 8th. See rule 44. May 8th, however, was Sunday, and as, by the rule, appellant is required to serve his argument at least thirty days before the date assigned for the hearing, perhaps we ought to hold that Saturday was the last day for service. However this may be, the showing for appellant in resistance to the motion is that he mailed his argument at Waterloo on the 6th, in time for it to have reached appellee's attorneys in Des Moines by due course of mail on the 7th. It was not actually delivered to them by carrier

until about 10 o'clock on the morning of the 9th. Perhaps if there were no excuse for postponing the mailing of the argument until the evening of the very last day on which it could be mailed to possibly reach the opposing attorney in time, or if there were no excuse other than the ordinary one of failure of the printer to complete the work at the very day on which he has contracted to do so, we might be inclined to enforce the rule strictly, but in this case it appears that a casualty which appellant's attorney could not have anticipated interfered with the preparation of his argument, and we do not think that we ought to affirm the case on account of what was in fact only a few hours' delay in serving his argument on appellee's counsel. They were not entitled to have the argument in time to make any preparation for their own argument in response on Saturday, and it is not to be assumed that they would labor in their client's cause upon Sunday, and we are not disposed to enforce the rule with harshness where there has been no unreasonable neglect and no real prejudice. The motion to submit the cause as of May 7th, and to affirm for want of argument on the part of appellant, is *overruled*.

For the reasons set forth in this opinion, the action of the trial court in sustaining the motion to direct a verdict for the defendant, and in rendering judgment thereon, is RE-VERSED.