## BESSLER *v.* LAUGHLIN.

[No. 20,826.   Filed January 29, 1907.]

1. PLEADING.—*Complaint.—Negligence.—Factory Act.*—A complaint alleging that plaintiff was employed to roll logs into a vat; that the cover for such vat was standing near such vat, and that, without plaintiff's fault, such cover fell against plaintiff knocking him into such vat, attempts to state a cause of action under §9 of the factory act (Acts 1899, p. 231, §7087i Burns 1901).   p. 40.

2. SAME.—*Complaint.—Negligence.—Factory Act.—Intervening Agency.—Proximate Cause.*—A complaint showing that defendant's vat cover was leaning, as was customary, against a post, and that it fell upon plaintiff, and knocked him into such vat and injured him, while he was exercising due care, sufficiently shows that defendant's breach of duty in failing to cover such vat was the proximate cause of the injury.   p. 40.

3. NEGLIGENCE.—*Breach of Duty.—Basis of Liability.*—The basis of responsibility for the exercise of due care is the fact that defendant's omission endangers the safety of a third party.   p. 41.

4. SAME.—*Omissions.—Cause of Injury.*—That defendant could reasonably apprehend danger to someone from his omission constitutes negligence toward the injured party.   p. 41.

5. SAME.—*Proximate Cause.*—Where plaintiff's injury follows defendant's negligent omission as a natural sequence and without the intervention of a supervening cause, and such injury is so related to such omission as morally to be regarded as the efficient cause, such omission is the legally proximate cause of the injury.   p. 41.

6. SAME.—*Proximate Cause.*—The efficient and predominating cause of an injury is considered as the legally proximate cause, although subordinate and dependent causes may have assisted.   p. 41.

7. NEGLIGENCE.—*Factory Act.—Effect of.*—The effect of §9 of the factory act (Acts 1899, p. 231, §7087i Burns 1901) is to extend the common-law duty of the master in furnishing safe ways, works and machinery.  p. 42.

8. SAME.—*Proximate Cause.—Concurring Causes.—Factory Act.* —The master is not relieved from liability for the violation of §9 of the factory act (Acts 1899, p. 231, §7087i Burns 1901) because other non-responsible agencies concurred with his negligence in producing the injury complained of.  *P. H. & F. M. Roots Co.* v. *Meeker*, 165 Ind. 132, distinguished.  p. 42.

9. WORDS AND PHRASES.—*"Guard."—Factory Act.*—The word "guard" as used in §9 of the factory act (Acts 1899, p. 231, §7087i Burns 1901) imports a protective or defensive device attached to a machine or implement.  p. 43.

10. NEGLIGENCE.—*Factory Act.—Vats.—Guards.*—Section 9 of the factory act (Acts 1899, p. 231, §7087i Burns 1901) provides for the protection of a vat used in manufacturing, but not to a cover therefor leaning against a post near by.  pp. 43, 45.

11. SAME.—*Assumption of Risk.—Factory Act.*—The doctrine of assumption of risk does not apply in cases of the violation of the factory act (Acts 1899, p. 231, §9, §7087i Burns 1901).  p. 43.

12. APPEAL.—*Joint Exceptions.*—A single exception to the overruling of a several demurrer to the paragraphs of a complaint is several as to each paragraph thereof.  p. 45.

From Ripley Circuit Court; *Willard New,* Judge.

Action by John Laughlin against George Bessler.  From a judgment on a verdict for plaintiff for $800, defendant appeals.  Transferred from Appellate Court (See 38 Ind. App. 14), under subd. 1, §1337j Burns 1901, Acts 1901, p. 565, §10.  *Reversed.*

*Miller, Elam, Fesler & Miller* and *Lesh & Lesh,* for appellant.

*John O. Cravens* and *Roberts & Cravens,* for appellee.

GILLETT, J.—Action by appellee against appellant for personal injuries sustained by falling into a vat.  It is contended by counsel for appellant that his separate demurrer to the first and second paragraphs of the complaint should have been sustained.  It appears from both of said paragraphs that appellee was employed in appellant's veneer

works, at Batesville, Indiana, in rolling logs into a vat; that a cover had been provided for said vat, to be placed over it when not in use; that at the time in question, and while appellee was rolling logs into said vat, the cover thereof was standing on its side, near said vat, and supported by a post; that the cover became dislodged, without the fault of appellee, and fell against him, causing him to lose his balance and fall into the vat. The first paragraph charges negligence in failing to provide and maintain a guard-rail across and over the vat, while the second charges negligence in failing to provide a catch, snap, hook, chain, rope or other attachment or safeguard to said cover, to attach and securely fasten it when raised. Said paragraphs were evidently intended to charge a violation of section nine of the act of March 2, 1899 (Acts 1899, p. 231, §7087i Burns 1901), commonly known as the factory act. But one objection is offered by appellant's counsel to the first paragraph. They assert that it shows, notwithstanding the general allegation that appellee was injured by reason of the failure to provide a guard-rail, that the proximate cause of the injury was the falling of the cover.

It is charged in said paragraph that the cover was leaning against the post for support, as was necessary, proper and customary, but, on the other hand, it is alleged that appellee was exercising care, and that the cover became dislodged, without his fault, and fell over on him. The conditions, therefore, under which appellee worked were permanent in their character, and of appellant's own making, while, on the other hand, appellee's connection therewith was wholly innocent. In these circumstances we decline to hold, as against the express averment as to the cause of the accident, that the mere disclosure of the fact that the vat cover—a nonresponsible agency—in some way fell, constituted a showing of the existence of such

a new and independent agency as to break the causal connection between appellant's violation of duty and the injury.

While it might be that the appellant could scarcely have apprehended that his omission would eventuate in injury in the particular way that harm came to appellee,

3.  yet it is the general rule that it is the danger of harm to third persons, considered in the abstract, rather than in the concrete, which constitutes the basis of responsibility for the exercise of due care.  *Coy* v. *Indianapolis Gas Co.* (1897), 146 Ind. 655; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413; *Chicago, etc., R. Co.* v. *Pritchard* (1907), *post*, 398; 1 Street, Foundations of Legal Liability, 104; 1 Thompson, Negligence (2d ed.), §59, and cases cited.  Whether a defendant was called on to apprehend that any injury might result from his

4.  omission is a matter which ordinarily goes to the question of whether there was any negligence.  But granting that the omission was negligent, that, without the intervention of any supervening cause, the wrong followed the injury in a natural sequence, and that the negli-

5.  gence and the injury were so correlated that morally the defendant's omission should be regarded as the efficient cause of the wrong complained of, it may, without hesitation, be affirmed that such omission should be regarded as a proximate cause of the injury.  *Coy* v. *Indianapolis Gas Co., supra.*  To borrow from the thought of a leading writer, whose text upon the subject was quoted *in extenso* by this court in the case last cited:  " 'The law is practical, and courts do not indulge refinements and

6.  subtleties as to causation if they tend to defeat the claims of natural justice.  They rather adopt the practical rule that the efficient and predominating cause in producing a given effect or result, though subordinate and dependent causes may have operated, must be looked to in determining the rights and liabilities of the parties.' "

Here a statute has been enacted, as has been observed in other jurisdictions in interpreting like statutes, in extension of the common-law duty to furnish a safe place.

7. The enactment in question is a legislative recognition of the fact that the existence of such things in a factory as open vats so reduces the margin of safety that accidents will thereby not infrequently happen to employes while in the line of duty, and so the lawmaking power, becoming at once a conscience and a judgment for the master, has declared his duty in the premises.

As to those to whom the duty is owing, the provisions of the statute are not to be emasculated by acquitting the master of responsibility merely because he can point to some

8. non-responsible or non-negligent agency in the line of causation, where his own omission was in reality the efficient and morally responsible cause of the injury. It was said by the supreme court of Iowa, in a case which apparently rested on the common law: "It is argued for defendant that the proximate cause of the accident was either the negligence of Hopkins, the coemploye, in feeding a board into the machine while plaintiff was in such position as to be struck by it when thrown out, or the blow received by plaintiff from such board, and not the uncovered cogwheels. But, excluding the negligence of plaintiff himself, it is immaterial whether there was another concurrent cause for the injury, if the injury would not have happened had the cogwheels not been negligently left unguarded. The very purpose of guarding the cogwheels would have been to avoid injury to an employe, if by some cause, not due to his own fault, he was brought within reach of them." *Buehner* v. *Creamery, etc., Mfg. Co.* (1904), 124 Iowa 445, 100 N. W. 345, 104 Am. St. 354. The case of *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132, turns upon the question whether the plaintiff therein was so far an independent actor in the premises as to render the defendant's violation of the statute a remote cause. That case

is clearly distinguishable from the one at bar. It is our opinion that the objection to the first paragraph of the complaint which we have been considering is not well taken. Whether it is open to any further objection we are not called on to determine.

Taking up the second paragraph of complaint, it appears that the ground on which a liability is therein sought to be predicated is, not the failure properly to guard the vat, but the failure to guard, by some appliance, an object which for the time being was separate from the vat. The adoption of appellee's theory in this particular would be, in our judgment, to extend the statute beyond its purview. The meaning of the verb "guard" is brought out by the definitions of the noun. One of these definitions, as given by the Standard Dictionary, is: "Any one of various protecting or defensive devices for wearing, or for attaching to an object, as a machine or implement." As applied to the case before us, it must be said that it was the vat which the legislature regarded as the dangerous object, and its requirement was, as we construe the law, that something, in the nature of a shield or protection, should be placed between the person to be guarded and the danger. It was upon the ground that this and kindred statutes impose specific duties upon the master that this court held that the doctrine of assumed risk did not apply in such cases. *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944; *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319; *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673. Thus, in *Davis Coal Co.* v. *Polland, supra,* in discussing the question of whether the common-law doctrine of assumed risk, growing out of a knowledge of defective conditions, should be applied where the right of action grew out of the coal mining statute, it was said: "The manner of constructing and maintaining the working places and appliances so as to measure up to the general standard of the reasonably pru-

dent person was no longer left to the judgment of the employer. A definite standard was fixed by the legislature. It is the duty of the employer to use the very means named in the statute. He is not at liberty to adopt others, though in his opinion they are more efficacious than those prescribed by the lawmakers. How, then, can there be any lawful basis for an agreement, implied or expressed, that the employer shall violate the law, and that the employe shall be remediless ?  *  *  *  If the employer may avail himself of the defense that the employe agreed in advance that the statute should be disregarded, the court would be measuring the rights of the persons whom the lawmakers intended to protect by the common-law standard of the reasonably prudent person, and not by the definite standard set up by the legislature. This would be practically a judicial repeal of the act. It is no hardship to the employer to disallow him a defense based on an agreement that he should violate a specific statutory duty. His sure protection lies in obedience to the law. The risks that still inhere in the business after this is done may be assumed by the employe." It is evident that this line of argument would entirely fail if we should hold that the duty properly to guard vats did not mean that an appliance was to be placed on or about the thing to be guarded, but that the duty was of a nebulous character, which extended to every object that might be about the vat. So to hold would be to contradict the theory on which we have proceeded in the construction of the statute. Besides, its own words show that it was the use of an appliance which was provided for, rather than a charging of the master with the duty of creating a zone of care, since in that immediate connection we find provisions that "no person shall remove or make ineffective any safeguard * * * around any vat or pan while the same is in use, unless for the purpose of immediately making repairs thereto, and all such safeguards shall be promptly replaced."

It is evident to our minds that so far as all detached objects about vats are concerned there is nothing to indicate that it was the legislative purpose to change the common-law relation of employer and employe. We therefore hold that the court below erred in overruling the demurrer to the second paragraph of the complaint. The question has been raised as to whether the exception which was reserved to the sustaining of appellant's demurrer to each paragraph of the complaint was an exception in gross. Since the transfer of this case said question has been fully considered by this court in *Whitesell* v. *Strickler* (1907), 167 Ind. 602, and on the authority of that case we hold that in legal effect the exception was several.

Judgment reversed, with a direction to sustain the demurrer to the second paragraph of the complaint.