INDIANAPOLIS UNION RAILWAY COMPANY ET AL. v. WADDINGTON, ADMINISTRATOR.

[No. 21,106.  Filed December 11, 1907.]

1. APPEAL.—*Right of.*—The right of appeal from the Appellate Court to the Supreme Court is statutory.  p. 453.

2. STATUTES.—*Repealing Clauses.—Construction.*—The repealing clause of a statute, like any other provision thereof, is subject to construction; and an express declaration of a repeal will not be enforced where it is evident that the legislature did not ,so intend.  p. 453.

3. SAME.—*Appeal.—Jurisdiction of Supreme Court.*—The · act of 1907 (Acts 1907, p. 237, §§1392, 1393 Burns 1908) continues in force the policy of the State giving the Supreme Court final ap-. pellate jurisdiction in cases involving a money judgment of more than $6,000; and a construction of such statute, which carries out such policy, is preferable.  p. 453.

4. SAME.—*Repealing Clause.—Construction.—Appeal.—Jurisdiction of Supreme Court.*—Section two of the act of 1907 (Acts 1907, p. 237, §1393 Burns 1908), providing (1) for exclusive appellate jurisdiction in the Supreme Court of cases involving a money judgment of more than $6,000, (2) for the transfer to the Supreme Court of such cases in the Appellate Court not ready for distribution, and (3) for the retention and "final" determination by the Appellate Court, of .those cases "ready for distribution" the same as if this act had not. been passed, and section three of said act (Acts 1907, p. 237), expressly repealing subdivision three of §10 of the act ·of 1901 (Acts 1901, p. 565, §1337j Burns 1901), which provided for an appeal from the Appellate to the

Supreme Court in such cases, when considered in connection with §1337q Burns 1901, Acts 1901, p. 565, §17, providing that the decision of the Appellate Court shall be vacated where an appeal is taken to the Supreme Court therefrom, do not deny an appeal from the Appellate to the Supreme Court in such cases ready for distribution in the Appellate Court at the taking effect of such act of 1907. p. 454.

5. STATUTES.—*Ambiguous.—Construction.*—An ambiguous statute will be construed, where possible, so as to prevent absurdity, hardship or injustice. p. 455.

6. PLEADING.—*Complaint.—Negligence.—Master and Servant.*—A complaint alleging that defendant railroad company negligently did certain acts causing decedent's death, is sufficient, on demurrer, without a further allegation that the servants in charge of the company's car were acting in the line of duty. p. 457.

7. SAME.—*Complaint.—Negligence.—Railroads.*—A complaint showing that defendant street railroad company negligently ran its car upon a railroad crossing where it was struck and wrecked by a west-bound freight-train, and that immediately afterward defendant railroad company negligently ran ·its east-bound freight-train at an unlawful rate of speed against said car so lying on the crossing, thereby killing the decedent, sufficiently shows that the concurrent negligence of both companies was the proximate cause of the death. p. 458.

8. NEGLIGENCE.—*Concurring.—Proximate Cause.*—Where one by his negligence produces a dangerous condition which in conjunction with the negligence of another, reasonably to be anticipated, causes injury, both persons are liable to the one injured thereby, their concurrent negligence being considered as the proximate cause of such injury. p. 459.

9. RAILROADS.—*Tracks.—Notice of Danger.—Municipal Corporations.—Ordinances.*—A railroad track is notice of danger; and a traveler has no right to enter upon the railroad track relying merely upon the assumption that the railroad company will obey a municipal ordinance. p. 460.

10. PLEADING. — *Complaint.—Averments. — General.—Particular.*— Particular averments control general allegations in a complaint only where they are irreconcilable. p. 460.

11. NEGLIGENCE.—*Proximate Cause.*—In determining the proximate cause of an injury, the courts will not so indulge in refinements and subtleties as to defeat substantial justice. p. 460.

12. SAME.—*Proximate Cause.—Question for Jury.*—Where the complaint alleged that the concurrent negligence of a railroad company. in running its train in violation of a city ordinance, and a street railroad company, in running upon the railroad

track without looking for an approaching car, caused decedent's death, the question of the proximate cause of the injury is a question for the jury. p. 460.

13. PLEADING.—*Complaint.—Negligence.—Violation of Ordinance.*— A complaint alleging that defendant street railroad company negligently permitted its car to go upon a certain railroad track without sending its conductor forward to ascertain whether a train was approaching, as required by a certain city ordinance, "in full force and effect," by reason of which plaintiff's decedent was killed, sufficiently shows that such ordinance was in force on the day of such injury. p. 461.

14. MUNICIPAL CORPORATIONS.—*Ordinances.—Subsequent Statutes. —Saving Clauses.—Railroads.*—A city ordinance, passed by virtue of the act of 1865 (Acts 1865 [s. s.], p. 1), regulating the manner of crossing railroad tracks by street railroads was not nullified nor repealed by the passage of the act of 1891 (Acts 1891, p. 137), which gave such cities power to regulate the speed of cars and locomotives and to secure safety in the running of trains through the city, §1 thereof (§3772 Burns 1901) providing that all ordinances theretofore passed by such cities, not inconsistent with this act, shall remain in full force. p. 461.

15. MASTER AND SERVANT.—*Employers' Liability Act.—Assumption of Risk of Engineer's Negligence.*—A brakeman on one train does not assume the risk of the violation of a municipal speed ordinance by the engineer of an approaching train. p. 461.

16. PLEADING. — *Complaint. — Railroads. — Negligence.—Exceeding Speed Limit.—Ordinances.*—A complaint alleging that defendant railroad company negligently ran its train at an excessive speed in violation of a city ordinance, and by reason of such excess struck a street car, thereby killing decedent, states a cause of action. p. 461.

17. SAME.—*Complaint.—Railroads.—Negligence.*—A complaint alleging that defendant railroad company, without the knowledge of decedent, through its engineer and conductor "negligently ran against and collided with" a street car, thereby killing decedent, is sufficient on demurrer. p. 461.

18. MASTER AND SERVANT.—*Assumption of Risk.—Employers' Liability Act.—Railroads.—Engineers.*—The other servants on a train do not assume the risk of the negligence of the person in charge of the engine of said train, the doctrine of assumed risk not applying as against the statute (§7083 Burns 1901, Acts 1893. p. 294, §1). *American Rolling Mill Co.* v. *Hullinger*, 161 Ind. 673, distinguished. p. 462.

19. PLEADING. — *Complaint. — Negligence.—Avoidance of.—Conjectures.*—A complaint alleging that defendant negligently committed acts resulting in decedent's death cannot be held bad be-

cause of conjectures as to what decedent might have done to avoid the consequences of such negligence. p. 462.

20. PLEADING. — Complaint. — Negligence. — Proximate Cause.—A complaint alleging that defendant negligently committed a certain act, because of which decedent was killed, sufficiently shows that such negligence was the proximate cause of his death. p. 463.

21. TRIAL. — Interrogatories.—Verdict. — Railroads. — Street Railroads.—Answers to interrogatories to the jury, in an action against a railroad company and street railroad company for injuries caused by their concurrent negligence, that the motorman of the street railroad company at the beckoning of the conductor attempted to cross the railroad track, whereupon his car was struck by a west-bound freight-train, and that the railroad company's east-bound freight-train approached, running at the rate of twelve miles an hour, and that it could have been stopped if it had been run at the lawful rate of four miles an hour, and that the failure of the latter train's engineer to stop his train was not the sole and proximate cause of the injury, are not in irreconcilable conflict with a general verdict for plaintiff against both companies. p. 463.

22. EVIDENCE.—Oral.—Location of Railroad Crossing.—Oral evidence is admissible to show that a certain crossing of the tracks of a railroad and street railroad is within the corporate limits of a city. p. 465.

23. MUNICIPAL CORPORATIONS.—Speed Ordinances.—Validity.—A city ordinance limiting the speed of street-cars, passed before the advent of the electric car, is not invalid as applied to electric cars; and ordinances may lawfully distinguish between the rate of speed of electric cars and steam cars. p. 465.

24. TRIAL.—Instructions.—Duplication of.—It is not erroneous to refuse to give a requested instruction which is substantially covered by one already given. p. 465.

25. SAME. — Instructions. — Refusal to Give. — Interrogatories. — Harmless Error.—Where the answers to the interrogatories to the jury denied the facts upon which a requested instruction was based, the refusal to give such instruction was harmless. p. 465.

26. STREET RAILROADS.—Negligence.—Railroad Crossings.—It is gross negligence for the servants in charge of a street-car to attempt to cross railroad tracks in front of a closely approaching west-bound train and with a rapidly moving, approaching east-bound train but a few hundred feet away. p. 466.

27. TRIAL.—Instructions.—Contributory Negligence.—Street Railroads.—The failure to instruct the jury on the question of contributory negligence is not erroneous, where the defendant street railroad company negligently ran its car upon the railroad track

creating a sudden peril and causing the decedent, a brakeman upon an approaching freight-train to jump to the ground, where he was killed by a swiftly approaching train from the opposite direction, there being no evidence on which a finding of contributory negligence could be based. p. 466.

28. NEW TRIAL.—*Insufficient Evidence.—Street Railroads.—Railroad Crossings.—Ordinances.—Complaint.*—Where the complaint alleges that defendant street railroad company negligently failed to ascertain whether trains were approaching before running its car upon the railroad tracks, it is not necessary to introduce in evidence a city ordinance providing for such an investigation before crossing such tracks, such negligence being capable of proof otherwise. p. 468.

From Hamilton Circuit Court; *Samuel R. Artman,* Special Judge.

Action by Elmer E. Waddington, as administrator of the estate of John H. Heckman, deceased, against the Indianapolis Union Railway Company and another. From a judgment for plaintiff for $10,000, defendants appeal. Appealed from Appellate Court under subd. 3, §1337j Burns 1901, Acts 1901, p. 565, §10. *Affirmed.*

*Kane & Kane* and *Baker & Daniels,* for the Indianapolis Union Railway Company.

*F. Winter, W. S. Christian* and *W. H. Latta,* for the Indianapolis Street Railway Company.

*Remy & Berryhill, John W. Donaker* and *Shirts & Fertig,* for appellee.

GILLETT, J.—Appellee brought this action against the Indianapolis Union Railway Company and the Indianapolis Street Railway Company to recover for the alleged negligent killing of his decedent, John H. Heckman.

The first question for our consideration arises upon the motion of appellee to dismiss the appeal from the Appellate Court to this Court, on the ground that the act of March 9, 1907 (Acts 1907, p. 237, §1392 *et seq.* Burns 1908), has deprived us of jurisdiction. Section one of that act (§1392, *supra*), relates to cases which may be appealed directly to the Supreme Court, and the fourteenth clause of that section

gives this court jurisdiction in cases "wherein the amount of money in controversy, exclusive of interest and cost, on the judgment of the trial court exceeds $6,000." Section two (§1393, *supra*), provides that the clerk shall, upon the taking effect of the act, docket in the Supreme Court all cases then pending in the Appellate Court, not ready for distribution, the jurisdiction of which is by said act conferred upon the Supreme Court. Then follows this proviso: "That all cases other than those herein mentioned shall remain in the Appellate Court and be heard and finally determined by said Appellate Court as though this act had not passed."

It may be admitted that it was competent for the General Assembly to cut off this court's jurisdiction on appeal from the Appellate Court. We are of opinion, however, that this is not the effect of said act as applied to cases of the class in question which were ready for distribution at the time the law took effect. A repealing clause is subject to construction the same as any other provision of statute. *Arnett* v. *State, ex rel.* (1907), 168 Ind. 180, 8 L. R. A. (N. S.) 1192; 26 Am. and Eng. Ency. Law (2d ed.), 720. Even an express declaration of a repeal will not be given that effect when it is apparent that the legislature did not so intend. We observe in the first place that, as applied to cases in which more than $6,000 is in controversy upon the judgment, the statute continues the legislative policy of this State for many years to give this court final jurisdiction for the purposes of review of this class of cases. What reason could there be, therefore, for permitting certain cases of this class to be conclusively determined by the Appellate Court? A construction is to be preferred which carries out the general policy, thus leaving all interests unimpaired. 26 Am. and Eng. Ency. Law (2d ed.), 758; *Taylor* v. *Strayer* (1906), 167 Ind. 23; *State* v. *Kates* (1897), 149 Ind. 46. In determining whether it was the legislative purpose by the repealing

clause absolutely to repeal subdivision three of section 4. ten of the act of 1901 (Acts 1901, p. 565, §1337j Burns 1901), the fact must not be lost sight of that section seventeen of the latter act (§1337q Burns 1901), provides that if a cause be appealed to the Supreme Court from the Appellate Court, "the judgment of the division of the Appellate Court is thereby vacated." We would therefore have the startling consequence, as applied to cases which had been decided by the Appellate Court and were pending on appeal in this court at the time the act of 1907 took effect, that, if the provision for repeal were literally followed, there would not even remain the judgment of the Appellate Court, so that, whatever might have been the judgment of the latter court, the judgment of the trial court would have to prevail, the fact being that the act of 1907 had deprived us of jurisdiction, while §1337q, supra, had operated to vacate the judgment of the Appellate Court. It cannot be presumed that such a result was contemplated by the legislature when it added the repealing clause to the act of 1907. Therefore we are led seriously to doubt the proposition that said clause should be given an unrestricted operation. But we do not rest our conclusion on the above consideration. Section two provides that distributed cases of the class in question shall "be heard and finally determined by said Appellate Court as though this act had not passed." Looking at the question from this viewpoint, it appears that if the situation stood as to such cases as though the act of 1907 had not been passed, that court never did possess the power of final determination. The word "final," therefore, appears to have been used, as it frequently is in reference to judgments, as denoting the essential character of the judgment, and not the mere consequences thereof. 19 Cyc. Law and Proc., 532. If the Appellate Court is to hear and determine the case as if the act of 1907 had not been passed, it follows that said court had never had, and therefore is still without, the power to render a judgment which shall be final, using

that word in the sense of conclusive. Counsel for appellee find themselves constrained to argue as to the proper construction of the act as one of an ambiguous character,

5. but in view of the considerations above suggested, we can but regard such implied admission as leading to the conclusion that, so long as it is a matter of construction, such consequences should be avoided. "Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests. The considerations of evil and hardship may properly exert an influence in giving a construction to a statute when its language is ambiguous or uncertain and doubtful." Sutherland, Stat. Constr., §324. The motion to dismiss is overruled.

Heckman came to his death in a collision between a street-car of the Indianapolis Street Railway Company and a freight-train of the Indianapolis Union Railway Company, which occurred at the intersection of the latter's tracks with East street in the city of Indianapolis. The street runs north and south, and the steam railway tracks cross it at right angles. On the day in question the street-car, which was running north, came into collision with a locomotive (No. 11) attached to several freight-cars, which was going west on the north track of the steam railroad. Heckman, who was a brakeman of the Indianapolis Union Railway Company, and as such was riding on said locomotive, jumped therefrom, and was killed, by reason of the fact that the street-car was struck by another locomotive (No. 4) which, with a train of cars, was running east on the south track of said company. The case was tried on the ninth and tenth paragraphs of the complaint, and resulted in a verdict and judgment against both of said appellants. We shall not attempt to set out all of the averments of the ninth paragraph of complaint, but only so much thereof as is relevant to the objections which appellants severally urge against it. It is

therein alleged that the street railway company's servants, who were in charge of said street-car, knew that trains of the Indianapolis Union Railway Company passed over said crossing at frequent intervals, and could, by the exercise of reasonable care, have seen said locomotives approaching before going upon the tracks; that the street railway company negligently permitted its said car to enter upon said tracks without sending the conductor thereof, or any other person, in front of said car to ascertain whether locomotives or cars were approaching, as required by an ordinance of the city of Indianapolis approved February 9, 1901, and in full force and effect on November 26, 1902, the day of the collision. The ordinance referred to is then set out. It is further alleged that the Indianapolis Street Railway Company negligently failed to make reasonable or proper investigation in order to ascertain whether locomotives or trains were approaching said crossing, and negligently ran said street-car upon said tracks and crossing and in front of engine No. 4; that the servants of said street railway company in charge of said car knew, or by the exercise of reasonable care and diligence could have ascertained and known, before attempting to cross said tracks, that the locomotive and train approaching from the east would strike and collide with said car, and that if said collision occurred there would be danger of a collision with the train coming from the west; that the brake on said street-car was worn and out of repair, and when the servants in charge of said car discovered the approach of said locomotive No. 11 the brake on said car, by reason of its said worn and defective condition, as aforesaid, failed to work, and they were unable to stop said car, but negligently ran said car upon the tracks and crossing of said steam railway, and said car struck and came into collision with engine No. 11, and the front end of said street-car was turned to the west; that at or about the time of said collision, Heckman, who was in a position of peril on account of such impending collision, in order to avoid the danger,

jumped to the ground on the south side of said locomotive; that at that time, without the knowledge of said decedent, said locomotive No. 4, in charge of an engineer and conductor, the servants of the Indianapolis Union Railway Company, was being run backward at a high and dangerous rate of speed, that is to say, at the rate of more than four miles per hour, to wit, at the rate of eight miles per hour, in violation of an ordinance of said city "approved March 12, 1866, which is, and was at the time of the injury of said decedent as follows:" (Here the speed ordinance limiting the speed of locomotives and cars to a rate of speed of four miles per hour is set out.) It is further alleged that the servants in charge of said locomotive No. 4 saw, or could have seen, the street-car upon the crossing, and might have stopped the locomotive in time to avoid the collision if it had not been that they were running at said high and unlawful rate of speed, but because of that it was impossible for them so to do after they saw, or could have seen, the street-car and the locomotive in collision; that the servants of the street railway in charge of said car knew before entering upon said crossing in front of locomotive No. 11, or could have known by the exercise of ordinary care, and by complying with the provision of the aforesaid ordinance, that locomotive No. 4, and the train of cars attached thereto, were approaching at such high, dangerous and unlawful rate of speed, and that by reason thereof it would be impossible for the servants of the Indianapolis Union Railway Company to stop said locomotive and train of cars in time to avoid said collision, and that by reason of the negligence of defendants as herein alleged, and without the decedent's knowledge of said negligence, he lost his life.

The Indianapolis Street Railway Company has not questioned the sufficiency of the tenth paragraph of complaint. Counsel for said company insist, however, that the 6. ninth paragraph was insufficient, on the ground that it is not alleged that the servants of said company

were in the line of their duty. A sufficient answer to this proposition is that said paragraph directly charges the company with negligence, and that it is charged that decedent met his death by reason of the negligence of the defendants as therein alleged.

It is further urged by counsel for the street railway company that the ninth paragraph affirmatively shows that Heckman was killed as a result of the collision of locomotive No. 4 with the street-car, and from this it is argued that the street railway company had no reason to apprehend that the Indianapolis Union Railway Company was violating the speed ordinance, and that therefore the prior collision should be regarded as a remote rather than a proximate cause of the injury. Assuming the validity and operation of the speed ordinance as to the steam railway company, we have a case in which the two companies were contemporaneously engaged in the commission of unlawful acts. Each, in violation of law, was proceeding to the point of intersection, where the street-car, owing to the non-responsible act of the engineer of locomotive No. 11, would be brought into collision with locomotive No. 4, thus bringing into conjunction the consequences of the unlawful acts before referred to. Both ordinances had been adopted, as we must presume, for the purpose of increasing the margin of safety at the crossing, and, owing to a mutual disregard of the law on the part of the servants of the two companies, a consequence, which the ordinance was designed to guard against, happened. The unlawful presence of the street-car upon the steam railway tracks at that particular time, although the car had been stopped by the first collision, was still a continuing factor in the fatal accident which followed. It was not necessary that the servants of the street railway company should have been able to apprehend the concrete menace which attended upon their neglect to make out a case of negligence against them. *Chicago, etc., R. Co.*

v. *Pritchard* (1907), 168 Ind. 398, 9 L. R. A. (N. S.) 857; 1
Street, Foundations of Legal Liability, 104. It is enough,
it appearing that the original act of negligence was reason-
ably calculated to eventuate in the second collision, that the
injury, in the precise manner of its occurrence, now appears
to have been such a natural consequence of such negligence
as to warrant the conclusion that the street railway company
was really responsible for the injury. *Chicago, etc., R. Co.*
v. *Pritchard, supra*; *Hill* v. *Winsor* (1875), 118 Mass. 251;
*Hoepper* v. *Southern Hotel Co.* (1898), 142 Mo. 378, 44 S.
W. 257; 1 Thompson, Negligence (2d ed.), §59. Distinguish-
ing between causes and effects, there was abundant warrant
for the conclusion that the case was one of strictly contem-
poraneous negligence. It appears to us that the action was
properly brought against both defendants. *Barrett* v. *Third
Ave. R. Co.* (1871), 45 N. Y. 628; *Cuddy* v. *Horn* (1881),
46 Mich. 596, 10 N. W. 32, 41 Am. Rep. 178; *Lane* v. *Atlantic
Works* (1872), 111 Mass. 136; *Village of Carterville* v.
*Cook* (1889), 129 Ill. 152, 22 N. E. 14, 4 L. R. A. 721, and
note to this case in 16 Am. St. 248; *Flaherty* v. *Min-
neapolis, etc., R. Co.* (1888), 39 Minn. 328, 40 N. W.
160, 1 L. R. A. 680, 12 Am. St. 654. And see *Louisville,
etc., Ferry Co.* v. *Nolan* (1893), 135 Ind. 60. The editor of
the American State Reports, in the course of a care-
fully prepared note on the subject of proximate and
remote cause says, that the most frequent exception
to the rule that a defendant is not, in general, liable for
an independent act of negligence by a third person "is to
be found in that numerous class of cases in which a person
by his negligence produces a dangerous condition of things,
which does not become active for mischief until another per-
son has operated upon it by the commission of another negli-
gent act, which might not unreasonably be anticipated to
occur. The original act of negligence is then regarded as
the proximate cause of the injury which finally results. The

principle is, that the first act is regarded as being continuous in its operation up to the time of the second, and therefore, for the purposes of fixing the defendant's liability, the two acts are treated as contemporaneous." *Gilson* v. *Delaware, etc., Canal Co.* (1892), 36 Am. St. 802, 845. Besides, the complaint shows that trains of the Indianapolis Union Railway Company passed such crossing, going in both directions, at frequent intervals. This court has said that a railway track is in itself a warning of danger, and no traveler is warranted, without any precaution, in venturing thereon, upon the mere assumption that the company has obeyed a municipal regulation. *Malott* v. *Hawkins* (1902), 159 Ind. 127; *Baltimore, etc., R. Co.* v. *Conoyer* (1898), 149 Ind. 524; *Miller* v. *Terre Haute, etc., R. Co.* (1895), 144 Ind. 323; 3 Elliott, Railroads, §1171. Here the complaint contains an averment as to the cause of the accident, and we cannot say that the particular averments as to the manner in which the accident occurred are sufficient to overcome such charge. *Bessler* v. *Laughlin* (1907), 168 Ind. 38. This court has frequently approved the declaration that courts do not indulge in refinements and subtleties as to causation that would defeat the claims of natural justice. *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *Coy* v. *Indianapolis Gas Co.* (1897), 146 Ind. 655, 36 L. R. A. 535; *Bessler* v. *Laughlin, supra*. The collision between locomotive No. 4 and the street-car cannot as a matter of law, on the facts pleaded, be said to have been a supervening cause; and, under the averments of the paragraph of the complaint in question, the question of proximate cause should have been submitted to the jury. *Chicago, etc., R. Co.* v. *Pritchard, supra; Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413; 1 Thompson, Negligence (2d ed.), §§161, 164.

As to the speed ordinance pleaded in the ninth paragraph of complaint, we are of opinion that a fair construction of

the pleading leads to the conclusion that the ordinance was in force at the time of the injury. *Madison, etc., R. Co.* v. *Taffe* (1871), 37 Ind. 361. It does not appear to us that said ordinance, which was passed by authority of the act of 1865 (Acts 1865 [s. s.], p. 1), was repealed by the act of March 6, 1891 (Acts 1891, p. 137), governing cities of more than one hundred thousand inhabitants. The latter act gave the right "to regulate the speed of horses, wheeled vehicles, cars and locomotives," and also "to secure the safety of citizens and others in the running of trains in and through said city." This was quite the equivalent in breadth of the act of 1865, and therefore, under the express provision of the later act, the ordinance was not repealed. See §3772 Burns 1901, Acts 1891, p. 137, §1.

Decedent did not assume the risk that the engineer upon locomotive No. 4 would violate the law. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319; *Chicago, etc., R. Co.* v. *Lawrence, ante,* p. 319. The ninth paragraph of complaint sufficiently showed that the negligence of the Indianapolis Union Railway Company was a proximate cause of the injury. We hold that said paragraph is not open to any of the objections which have been urged against it.

It is objected on behalf of the Indianapolis Union Railway Company that the tenth paragraph of the complaint does not charge that locomotive No. 4 was running in excess of the ordinance rate of speed, or that at the time of the collision it was negligently run. It must be admitted that said paragraph does not sufficiently show a violation of said ordinance; but, nevertheless, we think that it was sufficient on demurrer. It is alleged in said paragraph "that at said time, without the knowledge of the decedent, an engine of the defendant Indianapolis Union Railway Company, known as engine No. 4, in charge of an engineer and conductor, employes of the defendant Indianapolis

Union Railway Company, approached from the west," and "negligently ran against and collided with said street-car in the position aforesaid and threw said street-car from the tracks," etc.   While the allegation of negligence is very general, yet it was sufficient on demurrer.   *Indianapolis, etc., R. Co.* v. *Taffe* (1858), 11 Ind. 458; *Indianapolis, etc., R. Co.* v. *Keeley's Admr.* (1864), 23 Ind. 133; *Terre Haute, etc., R. Co.* v. *Graham* (1874), 46 Ind. 239; *Baltimore, etc., R. Co.* v. *Reynolds* (1904), 33 Ind. App. 219; *Illinois Cent. Railroad* v. *Davis* (1900), 104 Tenn. 442, 58 S. W. 296; *Chattanooga Rapid Transit Co.* v. *Walton* (1900), 105 Tenn. 415, 58 S. W. 737; *Davidson* v. *Chicago, etc., R. Co.* (1903), 98 Mo. App. 142, 71 S. W. 1069; note to *King* v. *Oregon Short Line R. Co.* (1898), 59 L. R. A. 209.   The paragraph predicates negligence on an act, namely the collision, and the charge shows a direct invasion of decedent's rights.

It is further asserted by counsel for said company that the negligence charged was the negligence of persons having charge of locomotive engines, under the fourth subdivision of section one of the employers' liability act (§7083 Burns 1901, Acts 1893, p. 294), and that the doctrine of assumed risk is applicable to cases arising under said fourth subdivision, citing *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673.   It is expressly pointed out in that case that the co-servant doctrine is not to be applied in those cases where the statute creates a liability on the part of the master for the delinquency of a particular class of servants, for the reason that such a holding would maintain in full vigor the co-servant rule which the statute was designed to modify.   Besides, as shown in connection with the discussion of the sufficiency of the ninth paragraph of complaint, decedent could not, as a co-servant, assume the risk of a violation of law.   We cannot hold the paragraph in question bad on account of remote conjectures as to what decedent might have perceived and

done to avoid the consequences of the collision. Counsel for said company do not question that it sufficiently appears that the acts done by those in charge of locomotive No. 4 were done in their capacity as servants of said company, and therefore it may be answered, as respects the claim that it is not shown that the act of the company was the proximate cause of the injury, that the general averment that decedent's death was caused by the negligence alleged, sufficiently shows said fact. *Bessler* v. *Laughlin, supra*. The tenth paragraph of complaint was somewhat inartistically framed, but it can at the least be said that counsel for said company have failed to point out any sufficient reason for sustaining a demurrer to that pleading.

Each of appellants in this case, by respective counsel, severally contends that the answers of the jury to interrogatories were such as to show that such appellant was not guilty of negligence proximately contributing to decedent's death. In substance the answers state that the first collision was a very slight one; that locomotive No. 4, with cars attached, was running at the rate of twelve miles per hour at the time of the first collision, in violation of said speed ordinance; that at that time said train was 250 feet away, and could not have been stopped in time to avoid the collision, although it could have been stopped had it been running at the rate of four miles per hour; that the dog did not slip out of the ratchet-wheel of the brake on the street-car, thus letting off the brake, and that the failure of the engineer of locomotive No. 4 to begin to stop his train promptly when he saw the first collision was not the sole and proximate cause of the second collision. Question thirty-eight, propounded to the jury by the street railway company, was as follows: "What, if any, careless or negligent act of any person engaged in running said street-car caused or helped to cause said first collision?" To this the jury answered: "The act of the conductor in beckoning the motorman to come on." There is certainly nothing in

the answers to interrogatories to show that the negligence of each company in approaching the crossing was not a proximate cause of the injury complained of. The negligence of the steam railway company in running in disregard of the speed ordinance was certainly a proximate cause of the second collision, and with trains coming from both directions, the west-bound train being so near as to bring it and the street-car in collision as the latter was passing the crossing, it certainly cannot be said, as a matter of law, that the servants in charge of the street-car were justified in taking the chance that the east-bound train would be under perfect control. Besides, whether we look to the evidence introduced, or act upon such evidence as would have been admissible under the issues—the rule applied to answers to interrogatories—it may be said that both the conductor and the motorman had abundant opportunity to observe and know the fact that locomotive No. 4 was moving faster than the ordinance authorized. The engineer of said locomotive testified that when he first saw the street-car he was 400 feet from the crossing and the street-car was about 250 feet therefrom; that he then sounded the whistle and started the bell, which operated automatically, to ringing; that when the street-car reached the crossing the motorman slowed up; that the conductor of the street-car ran ahead three or four feet, and that just as the car got on the crossing and stopped it was struck by locomotive No. 11. The latter locomotive, according to the other evidence, was moving very slowly. There was also evidence that from two hundred fifty to three hundred fifty trains passed over this crossing every day, and that the average speed at which they were operated on the day in question, and for several months theretofore, was about eight or ten miles an hour. In these circumstances there appears to be no basis for the claim that the street-car company was not guilty of negligence which proximately contributed to the injury. If its servants had

observed the care which is exacted of other travelers at railway crossings, they might have been sufficiently advised of the danger and of the extent thereof. If they perceived, as they should have done, the extreme hazard they were taking of coming into collision with locomotive No. 11, it certainly cannot be said as a matter of law, that they were justified in attempting to cross in supine disregard of danger from east-bound trains.

The Indianapolis Union Railway Company complains that the court erred in permitting the introduction of oral evidence that the crossing in question was within the corporate limits of the city of Indianapolis. A fact of this character is not required to be proved by the records where the question arises collaterally. *Shea* v. *City of Muncie* (1897), 148 Ind. 14; *Hewitt* v. *State* (1889), 121 Ind. 245; *Coonrod* v. *Madden* (1890), 126 Ind. 197.

It cannot be said that the speed ordinance became invalid from a failure afterwards to limit the speed of electric cars. The fact that such cars are more readily controlled than steam cars affords just ground for distinguishing between them in respect to speed.

A reversal is sought by the Indianapolis Street Railway Company because of a refusal to give its instruction three, relative to the quantum of care required being ordinary. Instruction four, given by the court on its own motion, contained a full exposition of this subject, and if it was in anywise subject to critical objection, the defect was one which was common to both instructions. We should, however, be compelled to refuse to reverse this case if there had been an omission to give an instruction on the subject of ordinary care. The jury, by its answers to interrogatories, discredited the testimony offered by said appellant that the motorman was unable to stop the car because the brake failed to work, and this left the company without a shred of defense. There re-

mains only the hypothesis that the servants of the street-car company attempted to cross the south track when the west-bound train was almost upon the car, and with the east-bound locomotive, on the north track, but a few hundred feet away, having whistled for the crossing and with the bell ringing. This was the grossest negligence.

Complaint is made by appellants of a number of instructions following instruction four. These objections are, that the court informed the jury that upon proof of the material allegations of the complaint the plaintiff might recover, and afterwards, without explaining that contributory negligence was a matter of defense, proceeded to give a general instruction that if the jury found that deceased was guilty of negligence it would defeat the action; that the court stated, in subsequent instructions, that upon the proof of certain facts the jury might find for appellee against said appellants, without in that connection calling attention to the subject of contributory negligence, and that the court gave certain instructions relative to a finding for the Indianapolis Union Railway Company in the event that decedent was guilty of such negligence, without in that connection referring to the effect of such negligence as to the Indianapolis Street Railway Company. Without pausing to determine whether the instructions were really misleading on account of the matter stated, we dispose of the questions by the holding that there was no question of contributory negligence in the case so far as the street railway company was concerned. It appears from the evidence and physical circumstances that it suddenly became evident to the crew upon locomotive No. 11 that a collision with the street-car was imminent. Decedent, who was standing on the south side of the gangway of said locomotive, jumped to the ground. At least one if not two men were in the opposite gangway, and two or three men jumped from that side. The north end of the street-car was pushed by the first collision until the front end of it was next to the cab of

the locomotive. The car was about forty feet long. A brakeman, who had jumped from locomotive No. 4, testified to having seen Heckman pass around the south end of the car just before the second collision. Another witness claimed that Heckman jumped when he was thirty or forty feet from East street. At any rate, he was caught when locomotive No. 4 ran into the car, as said car was dragged some distance. The burden was on said appellant to show contributory negligence, and it cannot be said that there was any evidence to warrant such a finding. The most that can be said of Heckman's conduct in jumping, is that it might have been safer to remain on the locomotive, or that he might have jumped on the other side. But there was sudden peril ahead of him, and time for deliberation was lacking. In these circumstances the party who caused the peril ought not to be heard to say that decedent did not take the course which was most prudent. *Clarke* v. *Pennsylvania Co.* (1892), 132 Ind. 199, 17 L. R. A. 811; *Indianapolis, etc., R. Co.* v. *Stout* (1876), 53 Ind. 143; *Indianapolis, etc., R. Co.* v. *Carr* (1871), 35 Ind. 510; *Lake Erie, etc., R. Co.* v. *McHenry* (1894), 10 Ind. App. 525. As to the decedent's subsequent conduct, the matter is involved in such entire uncertainty as to afford no possible basis for a conclusion that he was guilty of contributory negligence. Whether he was hurt before the second collision does not appear; whether he knew of the approach of locomotive No. 4 is unknown; whether he fell in jumping, or what was his mental condition while in peril of the second collision, were also matters which were wholly conjectural. If it can be said that the instructions did not clearly place the general doctrine of contributory negligence as a defense before the jury, it is a sufficient answer thereto to say that any other finding on that subject than that which the jury impliedly made by their general verdict would have been wrong upon the evidence.

The verdict was not contrary to law because the ordinance relative to the crossing of steam railroad tracks was not in-

troduced in evidence, as is contended by the street railway company. The ninth paragraph of complaint contained an independent charge that said appellant street railway company negligently failed to make reasonable or proper investigation in order to ascertain whether locomotives or trains were approaching, and negligently ran its car in front of locomotive No. 11 and locomotive No. 4. It was not necessary, therefore, that appellee should recover on proof of a violation of the ordinance. A few minor points, made by the Indianapolis Union Railway Company, have not been directly passed on by us, but our general observations in the course of this opinion suffice to dispose of them. In our opinion the result below was right, and prejudicial error has not intervened.

The judgment of the trial court is affirmed.